IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEOFFREY W. ATWELL, | : | CIVIL ACTION NO. **1:CV-03-1728** |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| SUPERINTENDENT T. LAVAN, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On September 30, 2003, Plaintiff, Geoffrey W. Atwell, filed, *pro se,* this civil rights action pursuant to 42 U.S.C. § 1983. On January 20, 2004, he filed an Amended Complaint. (Doc. 18).[1] The District Court dismissed Plaintiff's Amended Complaint on May 3, 2004, essentially because Plaintiff continued to misjoin Defendants in his pleadings. (Doc. 22). Plaintiff appealed the District Court's May 3, 2004 Order. On June 23, 2005, the Third Circuit vacated the District Court's Order holding that misjoinder of parties was not grounds for dismissal of an action, and remanded Plaintiff's case. (Doc. 40). As the Third Circuit Court stated in its June 23, 2005 Opinion issued in Plaintiff's Appeal of the District Court's Order dismissing his action (Doc. 22), "While in prison, Atwell filed a complaint under 42 U.S.C. § 1983 against 86 Defendants alleging that he was being held in custody beyond the expiration of his sentence, and that he was denied access to the courts and necessary medical care." (Doc. 40-2, p. 2).

---

[1]Plaintiff was a former inmate at SCI-Dallas.  He was released from confinement on May 2, 2004.

Subsequently, Plaintiff's Amended Complaint was screened, and fourteen (14) Defendants were dismissed. (Docs. 49 and 55). The remaining forty (40) Defendants were then served.

The District Court has stated that Plaintiff is proceeding on his Amended Complaint in this case. (Doc. 55).[2] Plaintiff was granted leave to proceed in forma pauperis. (Doc. 48).

Plaintiff basically claims that Defendants made him serve, as an inmate at the State Correctional Institution at Dallas, Pennsylvania ("SCI-Dallas"), illegal additional time beyond the maximum sentences imposed by the Adams County Court, which should have expired October 19, 2002, and not May 22, 2004. Plaintiff states that, by requiring him to serve more time than mandated by his sentences, Defendants violated his Constitutional rights. (Doc. 189, pp. 1-3). Plaintiff states that his alleged illegal incarceration from October 19, 2002 through May 22, 2004 "is cruel and unusual punishment in violation of the 8th Amendment" and that it violated his "5th and 14th Amendment Rights." (Id., p. 4). Plaintiff does not indicate if he filed a Petition for Writ of Habeas Corpus, while he still was in custody, with respect to his claim the he was made to serve prison sentences in excess of the sentences imposed by the state court. Plaintiff further claims that his First Amendment right to access to the courts was denied by Defendants. (Id., pp. 4-5).[3]

---

[2]As stated, Plaintiff's action was originally dismissed by the District Court. However, Plaintiff appealed, and his case was reinstated. The formerly assigned Magistrate Judge screened Plaintiff's Amended Complaint, Doc. 18, and recommended that fourteen (14) of the fifty-four (54) Defendants named therein be dismissed. The District Court adopted the recommendation and dismissed fourteen (14) Defendants. (Doc. 55).

[3] We note that in another action Plaintiff filed with this Court, 06-1048, M.D. Pa., the Third Circuit found that Plaintiff stated a claim in his civil rights action against Pennsylvania Parole Board staff, Department of Corrections personnel, and other Commonwealth employees, alleging that he was incarcerated beyond the expiration of his sentences, and that he advised Defendants of this and they did not take any action to correct it. See Atwell v. Schweiker, 2007

Plaintiff states that Defendants improperly calculated his sentences and as a result required him to serve almost two more years than ordered by his sentences.  Plaintiff contends  that his maximum incarceration date was October 19, 2002, and not May 22, 2004, which was the date Defendants released him.  Plaintiff also alleges that some Defendants violated his Eighth Amendment right to proper medical care.  Plaintiff is no longer incarcerated at SCI-Dallas.

In his amended pleading, Plaintiff named fifty-four (54) Defendants.  However, the District Court has dismissed fourteen (14) of those Defendants.  Defendant Kelly Gallagher was subsequently dismissed. (Doc. 108).  Thirty-nine (39) Defendants remain in this case.  (Docs. 55 and 108).  Service has been completed on all remaining Defendants.  All of the remaining Defendants have filed Answers to the Amended Complaint, or they have filed Motions to Dismiss or for Summary Judgment.[4]

---

WL 2900565 (3d Cir. 10-4-07)(Non-Precedential). Plaintiff also has two other civil rights cases pending with this Court, No. 06-1046 and No. 06-1047, M.D. Pa.

[4]Thirty-six (36) named Commonwealth Defendants filed a Summary Judgment Motion (Doc. 183).  Thomas Dougherty is a Commonwealth Defendant who was served (Doc. 82), but his name does not appear on Doc. 183.  Defendant Dougherty is alleged to be an Agent with the Pennsylvania Parole Board. (Doc. 18, p. 7, ¶ EE.).  Defendant Dougherty seems to have been inadvertently excluded from the Commonwealth Defendants' Summary Judgment Motion. In the docket entry for Doc. 130, Attorney Neuhauser, counsel for Commonwealth Defendants, filed a Motion for Reconsideration on Defendant Dougherty's behalf, along with the other Commonwealth Defendants.  There are several other docket entries where Defendant Dougherty is listed as a Defendant represented by Attorney Neuhauser, (e.g., Docs. 131, 132, 164, 176, and 181), but he does not appear on the Commonwealth Defendants' Summary Judgment Motion.  Clearly, Attorney Neuhauser represents Defendant Dougherty, and it appears as if this Defendant was inadvertently omitted from Doc. 183.  For present purposes, we consider Defendant Dougherty as a Commonwealth Defendant.

On January 23, 2006, Defendant Kelly Gallagher, P.A., a Physician Assistant at SCI-Dallas, filed a Motion to Dismiss the Plaintiff's Amended Complaint as against her. (Doc. 71). On March 13, 2006, as stated, the District Court granted Defendant Gallagher's Motion. (Doc. 108).

On March 27, 2007, Commonwealth Defendants filed a Motion for Summary Judgment. **(Doc. 183)**. The thirty-six (36) named Commonwealth Defendants are the following: Lavan, Beard, James, Burks, Kelchner, Kazor, Marsella, Griffith, Hildebrand, Bernard, Shaffer, McGrady, Faneck, Leachey, Zaledonis, Burnett, Putnam, Keller, West, Tucker, Smith, Morris, Higgins, Thomas, Harrison, Ginochetti, Doknovitch, Blizzard, Meyers, Gaughan, Martinez, Ryan, McCrone, Szierzyna, Selvey and Dietrich. (*Id*.). As noted, we find Defendant Dougherty is also a Commonwealth Defendant with respect to Doc. 183.[5] Since Plaintiff has stated the positions of the Commonwealth Defendants in his Amended Complaint (Doc. 18, pp. 3-12), we shall not repeat them. Commonwealth Defendants filed their Statement of Material Facts ("SMF") with Exhibits and their support Brief on March 28, 2007. (Docs. 184 and 185, respectively). (Commonwealth Defendants' Exhibits are attached to Doc. 184). On April 10, 2007, Plaintiff filed his Brief in opposition to the Commonwealth Defendants' Summary Judgment Motion, with an attached Appendix. (Docs. 194 and 194-2). After being granted an extension of time, Commonwealth Defendants filed their Reply Brief in support of their Summary Judgment Motion on April 23, 2007. (Doc. 200).

---

[5]The Commonwealth Defendants are Pennsylvania Department of Corrections ("PA DOC) officials and staff, as well as officials of the Pennsylvania Board of Probation and Parole. Two of the other three remaining Defendants in this case, namely, Bohinski and Stanish, "Medical Defendants," have filed a separate Summary Judgment Motion. (Doc. 187). We shall address this Summary Judgment Motion by separate Report and Recommendation.

As noted above, we find that Defendant Dougherty is also a Commonwealth Defendant, but his name was inadvertently omitted from Doc. 183.

On May 11, 2007, Plaintiff, without leave of Court (*See* Local Rule 7.7, M. D. Pa.), filed a Sur-reply Brief with an Exhibit in response to the Commonwealth Defendants' Reply Brief. (Doc. 209).      On May 4, 2007, Commonwealth Defendants filed a letter to the Court with a new Third Circuit case as additional authority in support of their Summary Judgment Motion, namely *James v. PA DOC*, 230 Fed. Appx. 195 (3d Cir. 2007)(Non-Precedential).  (Doc. 204).  We will consider this new case relied upon by Commonwealth Defendants since it was decided April 27, 2007, after Commonwealth Defendants filed their Reply Brief.

On April 2, 2007, Plaintiff filed a cross-Summary Judgment Motion, a support Brief, as well as a support Memorandum and an Appendix.  (Docs. 188, 189, 190 and 191).[6]

We first consider the Summary Judgment Motion of Commonwealth Defendants since their Motion was filed prior to Plaintiff's dispositive motion.

Commonwealth Defendants argue that the record demonstrates that they did not violate Plaintiff's right to proper medical care while he was a inmate, as he alleges in his Amended Complaint, *i.e.* Plaintiff's Eighth Amendment denial of proper medical care claim.  (Doc. 185, p. 2).  Commonwealth Defendants also argue that they are entitled to summary judgment with respect to Plaintiff's First Amendment access to courts claim since the policies which Plaintiff challenges did not violate his First Amendment right.  (*Id*.).  Further, Commonwealth Defendants argue that they should be granted summary judgment with respect to Plaintiff's Eighth Amendment excessive confinement claim and claim that they improperly computed his sentences since he was not

---

[6]On May 4, 2007, Plaintiff filed a Memorandum with corrections to his Brief (Doc. 189). *See* Doc. 205.

confined beyond the maximum date of his sentences.  (*Id.*, p. 3).

We shall first discuss Plaintiff's Eighth Amendment denial of proper medical care claim as against the Commonwealth Defendants.  We find that the evidence does not show that these Defendants violated Plaintiff's Constitutional right to adequate medical care.  We also find that, since Plaintiff was being treated by the prison medical staff and doctors, in particular, Defendants Dr. Bohinski and Dr. Stanish (Medical Defendants), he fails to show the required personal involvement of the Commonwealth Defendants regarding his medical care.

We have reviewed Plaintiff's amended pleading and the evidence, and find that there is no showing that Commonwealth Defendants were deliberately indifferent to any of Plaintiff's serious medical conditions in violation of the Eighth Amendment.[7]

## II. Section 1983 Standard.

In a § 1983 civil rights action  the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v.*

---

[7]In fact, the Amended Complaint, Doc. 18, only states that eight (8) Commonwealth Defendants (in addition to Medical Defendants) were directly involved with his medical care, namely Defendants West, Tucker, Smith, Dietrich, Thomas, Harrison, Ginochetti, and Doknovitch. (Doc. 18, pp. 3-12). Plaintiff states that supervisory Defendants Lavan and McGrady denied his grievance appeals regarding his Eighth Amendment denial of medical care claims.  Plaintiff does not state that any of the remaining Commonwealth Defendants were personally involved in his Eighth Amendment denial of proper medical care claim.  Plaintiff does not mention any specific allegations against these remaining Commonwealth Defendants as to how they denied him proper medical care, and how they were deliberately indifferent to his serious conditions.  Further, as discussed below, the Plaintiff does not allege any other basis to hold these remaining Commonwealth Defendants liable for denial of proper medical care.

*Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[8] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id*. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id*. With these principles in mind, Plaintiff's allegations with respect to the Defendants will be discussed.

---

[8]Plaintiff alleges in his amended pleading that Commonwealth Defendants were employees of the State. (Doc. 18, pp. 3-12). This is sufficient to show that these Defendants were state agents.

### III. Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id*., *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Moreover, the Third Circuit has recently indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

## IV. Allegations of the Amended Complaint.

In his Statement of Claim section of his Amended Complaint (Doc. 18, p. 13), Plaintiff asserted his stated three Constitutional claims, *i.e.* Eighth Amendment excessive confinement claim, Eighth Amendment denial of proper medical care claim, and First Amendment denial of right to access to courts claim, and alleged as follows with respect to his claims:

IV. STATEMENT OF CLAIM

A.     Plaintiff, through written and/or personal notification, has been denied a vested absolute liberty interest of freedom by Defendants allowing illegal additional sentence to sentence imposed by Pa. judiciary same offense without penological justification violation of 5th Amendment double jeopardy section, as vested with states in 14th Amend as Defendants, acting under color of law, refused to investigated and acquiesced, inflicting cruel unusual punishment of illegal imprisonment volatile environment as Plaintiff's judicially imposed sentencing was completed on/or about May 22, 2002, also violating the 8th Amendment, all in deliberate indifference with reckless disregard, repugnant to the conscience of mankind.

B.     Plaintiff has been denied access to the courts by Defendants such that Plaintiff's legal files have been confiscated, denying pursuance of 3rd Circuit docket 01-1209/2155 reconsideration motion; creating difficulty pursuing docket no. 1:03 CV-01728; pursuance Plaintiff's appeals criminal cases Pa. dockets and, denial

after completion Plaintiff's Pa. Judicially imposed sentencing and/or about May 22, 2002.

C.      Plaintiff has been subject to cruel and unusual punishment by recklessly disregarding with deliberate indifference Plaintiff's serious medical conditions before and after completion of Plaintiff's judicially imposed sentencing as completed on/or about May 22, 2002.

(Doc. 18, p. 13).

Thus, we agree with Commonwealth Defendants that Plaintiff has asserted three claims in this case.  Specifically, as Commonwealth Defendants state in their Brief (Doc. 185, p. 3):

> [P]laintiff presents three claims of alleged constitutional violations in this case: 1) that Commonwealth defendants violated a Fourteenth Amendment liberty interest in freedom from incarceration because, plaintiff contends, he should have been released from custody in May 2002 rather than May 2004; 2) that Commonwealth defendants violated plaintiff's First Amendment right of access to the courts because a) he had insufficient funds in his inmate account to meet the expense of mailing certain documents to the court in civil actions he was then pursuing, and b) he was not permitted to retrieve certain "legal" materials stored in the prison's storage room; and 3) that defendants violated plaintiff's Eighth Amendment right to freedom from cruel and unusual punishment because they were deliberately indifferent to his serous medical needs.

## V.  Undisputed Material Facts.

Commonwealth Defendants have filed their lengthy (¶'s 1.-57.)  Statement of Material Facts ("SMF") along with numerous exhibits in support of their Summary Judgment Motion.  (Doc. 184). Plaintiff has responded to Defendants' numerous SMF's and has submitted exhibits.  (Doc. 194, pp. 6-10 and Doc. 191).  Both parties have relied upon evidence in the record to support their SMF's and responses thereto.

10

Commonwealth Defendants' SMF (57 paragraphs) filed in support of their Summary Judgment Motion and Plaintiff's Response to Defendants' Statement of Material Facts  (Docs. 184 and 194, respectively), were filed pursuant to Local Rule 56.1, M.D. Pa.  Defendants' SMF and Plaintiff's Responses both include references to the parts of the record that support each of their Statements and Responses thereto.  In fact, both documents contain citations to their exhibits with respect to Defendants' SMF's.  (*Id*.).  Defendants' Exhibits A-E, and attachments thereto are found at Doc. 184, and Plaintiff's Exhibits are found at Doc. 194-2 and 191.  We note also that Plaintiff's responses to Defendants' SMF (Doc. 194, pp. 6-10) refer to the numbered paragraphs set forth in Defendants' SMF as required by Local Rule 56.1.

Thus, to the extent that Defendants' SMF's are not disputed by Plaintiff in his Memorandum (Doc. 194), we shall consider them as unopposed.  Therefore, we accept the stated facts contained in Defendants' SMF's that are supported by the evidence and that are not disputed by Plaintiff's responses thereto, and we will adopt them as our own herein.  *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (Under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[9]

We shall accept the following SMF's of Defendants (Doc. 184), in full or to the extent stated, and we shall indicate which SMF's we find disputed by Plaintiff:[10]

---

[9]*See also Paranich* District Court case at 286 F. Supp. 2d at 447, n. 3.

[10]The numbered paragraphs of Defendants' SMF's with no comment are adopted in full as undisputed.  Due to the numerous SMF's (57 ¶'s), we do not re-state the paragraphs which we find to be undisputed.

¶ 1., except that Plaintiff is now 65.

¶ 2.

¶ 3.

¶ 4.

      *i.  SMF's Regarding Plaintiff's Eighth Amendment Illegal Excessive Confinement Claim*

¶5. [11]

¶ 6.

¶ 7.

¶'s 8.- 9. are admitted by Plaintiff, and Plaintiff states that his April 11, 2000 judgment of sentences

for four of his Adams County Court of Common Pleas ("CCP") sentences (Doc. 191, Ex. 17) were

modified on May 22, 2000, and Plaintiff's exhibits reveal that the CCP entered the following Orders

on May 22, 2000:

> The Sentences entered on April 11, 2000 are modified in the
> following regard: The Sentence of the Court in CC-245-98 is
> as follows: On Count one, theft by unlawful taking in violation
> of Section 3921 (a) of the Crimes Code as a misdemeanor of

---

[11] There is no dispute that Plaintiff originally contended that his maximum Adams County Court sentences (3) expired on or about May 22, 2002, and that he was illegally incarcerated from May 22, 2002 through May 22, 2004.  (Doc. 194, p. 13 and Doc. 184, Ex. A, NT 14).  We note that Plaintiff's deposition transcript from August 26, 2006 is found at Doc. 184, Ex. A. Plaintiff's deposition supports several of Defendants' SMF's as Defendants indicate in their SMF, Doc. 184.  We also note that in his filings in this case, Plaintiff amended his claim to indicate that he was illegally incarcerated from October 19, 2002 through May 22, 2004.  (Doc. 194, p. 9-10, p. 13 and Doc. 190, p. 4).  In his April 23, 2007 opposition Brief, Plaintiff clearly states that he has amended his Eighth Amendment excessive confinement claim to the extent that he now asserts the date that his maximum sentence expired was October 19, 2002. (Doc. 201, p. 3).

the third degree, the Defendant shall be incarcerated for a period
of no less than one nor more than twelve months.  On Count two,
criminal mischief in violation of Section 3304 (a) (1) of the Crimes
Code as a summary offense, the Defendant shall be incarcerated
for a period of 90 days.

.............................

The Sentence of the Court on violation of Section 2703.1 of
the Crimes Code [Case No. CC-1050-99] as a felony of the
third degree is that the Defendant shall be incarcerated in a
State Correctional Institution for a period of no less than six
nor more than 24 months.  He shall pay the costs, a $100 fine
and all fees, fines and costs mandated by law, Local Rule of Court
or Administrative Order of Court.  This sentence shall be served
consecutive to the sentence imposed in CC-97-99.

(Doc. 191, Ex. 19 and Ex. 20).

¶ 10., it is undisputed that Plaintiff was paroled on his CCP sentences in cases CC-245-98, CC-458-98 and CC-522-99 on April 19, 2000.  (Doc. 194, p. 7, ¶ h.).

With respect to ¶'s 8.-16. of Defendants' SMF's and Plaintiff's responses thereto, for present purposes we find that the CCP's sentencing Orders (Doc. 191, Ex. 17, Ex. 19 and Ex. 20) speak for themselves.  The different interpretation by the parties of the CCP's April 11, 2000 and May 22, 2000 Orders contained in their SMF's and responses thereto (Doc. 184, ¶'s 8.-16. and Doc. 194, pp. 7-8)  regarding their effects on Plaintiff's Eighth Amendment excessive confinement claim will discussed below.

¶ 17.[12]

_____

[12]While Plaintiff does not state if he admits or denies ¶ 17. of Defendants' SMF (Doc. 194, p. 8), his own exhibit shows that Defendants' ¶ 17. is correct.  *See* Doc. 191, Ex. 21.

13

¶'s 18.-21., with respect to ¶'s 18.-21. of Defendants' SMF's and Plaintiff's responses thereto, for present purposes we find that the CCP's sentencing Orders of May 22, 2000 and March 21, 2001 (Doc. 191, Ex. 17, Ex. 19 and Exs. 20-21) to speak for themselves.  The different interpretation of the parties of the CCP's May 22, 2000 and March 21, 2001 Orders contained in their SMF's and responses thereto (Doc. 184, ¶'s 18.-21. and Doc. 194, pp. 8-9) regarding their effects on Plaintiff's Eighth Amendment excessive confinement claim will be discussed below.  Further, Plaintiff states that ¶'s 19.-21. of Defendants' SMF "are false," and they are disputed by Plaintiff.  (Doc. 194, p. 9).

### ii.  SMF's Regarding Plaintiff's Eighth Amendment Medical Care Claim

¶'s 22.-46. of Defendants' SMF's (Doc. 184, pp. 6-11) pertain to Plaintiff's Eighth Amendment denial of proper medical care claim.  Plaintiff generally asserts that Defendants' "SMF's Nos. 24-57, from the October 19, 2002 date of illegal incarceration are erroneous as proper medical care and access to the courts for Plaintiff  ... were denied ... as drugs given Plaintiff were generic, not brand name, and Plaintiff was refused medical diet ... ."  (Doc. 194, pp. 9-10).  We do not find that under Local Rule 56.1 M.D. Pa., Plaintiff has properly disputed ¶'s 22.-46. of Defendants' SMF's (Doc. 184) with respect to Plaintiff's Eighth Amendment denial of proper medical care claim.  Further, since Defendants have relied upon specific evidence (Doc. 184, Exs. A-D) to support each and every one of ¶'s 22.-46. of their SMF's (Doc. 184, pp. 6-11) as well as Plaintiff's voluminous prison medical records (Doc. 184, attached to Ex. C, Leskowsky's Declaration), we shall adopt them in their entirety and incorporate them herein by reference.  *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005).  We also find that

Plaintiff's undisputed medical records speak for themselves.   (Doc. 184, attached to Ex. C, Leskowsky's Declaration).

    *iii.  Defendants' SMF"s Regarding Plaintiff's First Amendment Denial of Access to Courts Claim*

    ¶'s 47.-57. of Defendants' SMF's (Doc. 184, pp. 11-14) pertain to Plaintiff's First Amendment denial of access to courts claim.  As stated, Plaintiff generally disputes ¶'s 24.-57. of Defendants' SMF's.  (Doc. 194, pp. 9-10).  We again do not find that, under Local Rule 56.1 M.D. Pa., Plaintiff has properly disputed ¶'s 47.-56. of Defendants' SMF's (Doc. 184, pp. 11-14) with respect to Plaintiff's First Amendment denial of access to courts claim.  Further, since Defendants have relied upon specific evidence (Doc. 184, Exs. A-D) to support each and every one of ¶'s 47.-57. of their SMF's (Doc. 184, pp. 11-14), we shall adopt them in their entirety and incorporate them herein by reference.  *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005).

    We now begin our discussion with respect to Plaintiff's Eighth Amendment denial of proper medical care claim.

## VI.  Discussion.

    *1.  Eighth Amendment Denial of Proper Medical Care Claim*

    Initially, we find that Plaintiff has not stated the personal involvement of several of the Commonwealth Defendants with respect to his Eighth Amendment denial of medical care claim. As noted, the Amended Complaint only states that eight (8) Commonwealth Defendants were directly involved with Plaintiff's medical care, namely Defendants West, Tucker, Smith, Dietrich,

Thomas, Harrison, Ginochetti, and Doknovitch. (Doc. 18, pp. 3-12).[13]

Plaintiff also states that supervisory Defendants Lavan and McGrady denied his grievance appeals regarding his Eighth Amendment denial of medical care claim.   Plaintiff states that Defendants Burks and James were involved with his Eighth Amendment medical care claim due to their role regarding his grievance. (Doc. 18, p. 5).   Plaintiff does not state that any of the remaining Commonwealth Defendants were personally involved in his Eighth Amendment denial of proper medical care claim.   Plaintiff does not mention any specific allegations against these remaining Commonwealth Defendants as to how they denied Plaintiff proper medical care, and how they were deliberately indifferent to Plaintiff's serious conditions.

Moreover, PA Board employee Defendants, namely, Myers, Gaughan, Martinez, Ryan, McCrone, Zwierzyna, Selvey, and Dougherty, are not alleged to have been personally involved in either of Plaintiff's Eighth Amendment denial of proper medical care claim or his First Amendment denial of access to courts claim. (Doc. 18, pp. 7-12).   Plaintiff only alleges the personal involvement of the eight (8) Defendant PA Board members with respect to his Eighth Amendment excessive confinement claim.   (*Id*.).   Further, Plaintiff's exhibits only show the personal involvement of the eight (8) Defendant PA Board members with respect to his Eighth Amendment excessive confinement claim. (Doc. 191, Exs. 25-A to 25-J).   Thus, we will recommend that Commonwealth Defendants' Summary Judgment Motion be granted with respect to the stated eight (8) PA Board

_____

[13]Plaintiff also alleges that the two Medical Defendants, Dr. Bohinski and Dr. Stanish, were personally involved with his medical care (Doc. 18, pp. 9-10), but these two Defendants have filed a separate Summary Judgment Motion which shall be the subject of a later Report and Recommendation.

Defendants, *i.e.* Myers, Gaughan, Martinez, Ryan, McCrone, Zwierzyna, Selvey, and Dougherty, as to both Plaintiff's Eighth Amendment denial of proper medical care claim and his First Amendment denial of access to courts claim since they were not alleged to have been personally involved with these claims. *See James, supra*, 230 Fed. Appx. at 198.[14]

Nor do we find that supervisory Defendants Lavan and McGrady have been properly alleged to have been personally involved with Plaintiff's Eighth Amendment denial of proper medical care claim. As stated, Plaintiff alleges that supervisory Defendants Lavan and McGrady denied his grievance appeals regarding his Eighth Amendment denial of medical care claim. (Doc. 18, pp. 3, 6). Plaintiff states that these two Defendants denied his appeal of his grievance No. 50246 that claimed his serious medical needs were not being treated. (*Id.*).[15] Plaintiff does not state any other personal involvement of these two supervisory Defendants with respect to his Eighth Amendment medical care claim. (*Id.*). Plaintiff merely alleges that these two Defendants violated his Eighth Amendment right to proper medical care due to their denial of his appeals of his grievance No. 50246 dated April 27, 2003. (Doc. 18, pp. 3, 6). Further, Plaintiff only alleges that Defendants

---

[14]We shall not discuss the eight (8) PA Board members Defendants (Myers, Gaughan, Martinez, Ryan, McCrone, Zwierzyna, Selvey, and Dougherty) below regarding Plaintiff's Eighth Amendment denial of proper medical care claim and his First Amendment denial of access to courts claim since he did not allege that they were personally involved with these two claims. (Doc. 18, pp. 7-12). We note that at the time Plaintiff's Amended Complaint was filed and screening under the PLRA was mandated pursuant to 28 U.S.C. §1915A, *James, supra*, 230 Fed. Appx. at 197(District Court is obligated to screen complaint under §1915A prior to service of process), the undersigned Magistrate Judge was not assigned this case for pre-trial matters.

[15]We do not find Plaintiff's grievance No. 50246 as an exhibit submitted by Plaintiff or Commonwealth Defendants.

Burks and James were involved with respect to his medical care claim regarding their role in denying his appeal of grievance No. 50246 (Burks) and in refusing to investigate grievance No. 50246 (James). (Doc. 18, p. 5). Since Plaintiff has no Constitutional right to a grievance procedure, we find that the denial of Plaintiff's grievance appeal by Defendants Lavan and McGrady, as well as by Burks, and the alleged refusal to investigate his grievance by Defendant James, fails to state an Eighth Amendment claim against them.

The law is well-settled that there is no constitutional right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.* 433 U.S. 119, 137-138 (1977). This very Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as the DOC does, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd. 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra.*

As the Court indicated in *James, supra*, 230 Fed. Appx. at 198, evidence only showing supervisory Defendants' involvement in an Eighth Amendment medical care claim was that they responded unfavorably to the inmate's later-filed grievances, does not establish an Eighth

18

Amendment violation against them.

Plaintiff has not stated an Eighth Amendment medical care claim as a result of the supervisory Defendants' (Lavan and McGrady) denial of his grievance appeals regarding his complaint about his medical care. As stated, Plaintiff had no Constitutional right to a grievance process. *See Weakley v. Fischi*, Civil No. 06-1823, M.D. Pa., 4-30-07 Memorandum, pp. 5-6 ("An allegation that an official ignored an inmate's request or that he did not take action to address a grievance is not sufficient to hold that official liable for the violation.") (citing *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997)). Thus, we shall recommend that Defendants Lavan and McGrady, as well as Defendants Burks and James, be granted summary judgment with respect to Plaintiff's Eighth Amendment medical care claim. Plaintiff also alleges that Defendant Burnett was involved with his Eighth medical care claim since this Defendant was the initial grievance coordinator who seemingly denied his grievance No. 50286 regarding his complaint about his medical care. (Doc. 18, p. 8, ¶ GG). Based on the above discussion, we will recommend that Defendant Burnett be granted summary judgment with respect to Plaintiff's Eighth Amendment medical care claim.

These stated Defendants are not sufficiently involved with Plaintiff's Eighth Amendment medical care claim and are alleged to only have had involvement with Plaintiff's grievance and the failure to investigate his grievance regarding his complaint about his medical care. Based on Plaintiff's voluminous prison medical records demonstrating his treatment for his conditions, the supervisory Defendants had no reason to believe that the prison medical staff were mistreating Plaintiff. Further, Plaintiff claims that his mistreatment included the failure of the medical staff to

give him name brand prescriptions instead of generic drugs does not establish an Eighth Amendment claim.  *See James, supra.*, 230 Fed. Appx. at 198.

Plaintiff alleges that Defendant James, DOC Manager of Grievances and Appeals, refused to properly investigate his grievances regarding both his Eighth Amendment medical care claim and his Eighth Amendment excessive confinement claim.  (Doc. 18, p. 5).  However, as the Court in *Wesley v. Dombrowski*, 2004 WL 1465650 *7 (E.D. Pa.), stated:

> There is also no constitutional right to require prison officials to investigate an inmate's grievances.  *Davage v. United States*, No. Civ. A. 97-1002, 1997 U.S. Dist. LEXIS 4844, at * 9 (E.D. Pa. Apr. 11, 1997); *see also Robinson v. Love*, 155 F.R.D. 535, 5365 n. 3(E.D. Pa. 1994) (citing cases).

Since this is Plaintiff's only claim against Defendant James, *i.e.*, failure to investigate Plaintiff's grievances, we shall recommend that this Defendant be granted summary judgment with respect to Plaintiff's entire case as against him.

Plaintiff indicates that his serious medical conditions were his kidney condition, his hypertension and diabetes, which required a prescribed medical diet, as well as his "submandibular gland" and skin rash.  (Doc. 18, pp. 8-10).  In his April 10, 2007 Memorandum (Doc. 194, p. 10) Plaintiff states that his Eighth Amendment right was violated since the drugs he was given by Defendants were generic and not brand names and since he was refused his medical diet, seemingly for his diabetes condition.  The record indicates that Plaintiff's medical conditions were as follows:

> On August 2, 2000, Mr. Atwell received an exam and a medical review, which noted that he had been diagnosed with several chronic conditions, including hypertension, gout, type 2 diabetes (non-insulin dependent),

sialoadenitis of the left submandibular gland and a history of
renal artery stenosis following a 1997 bilateral renal angioplasty.

(Doc. 184, Ex. C, ¶6.).

We agree, in part, with Defendants' note, Doc. 185, p. 4, n. 1, that all of the non-medical staff Commonwealth Defendants should be granted summary judgment with respect to Plaintiff's Eighth Amendment medical care claim since Plaintiff was at all relevant times under the care of the prison medical staff, and in particular Medical Defendants, Dr. Bohinski and Dr. Stanish.  We find that the Commonwealth Defendants who are alleged to be part of the prison's medical staff include Defendants Nurses Harrison and Ginocchetti, as Defendants note, but we also find that the medical staff Defendants include Defendant Thomas, RN.  (Doc. 18, p. 10).[16]  Plaintiff also states that Defendant Doknovitch was personally involved with respect to his Eighth Amendment medical care claim since this Defendant was the culinary manager, and that this Defendant refused to provide Plaintiff with his prescribed medical  diet for his serious medical conditions.  (Doc. 18, p. 11, ¶ VV.).

Thus, we agree with Defendants that all remaining Commonwealth Defendants, except for Defendants Nurses Harrison, Ginocchetti and Thomas, as well as Defendant Doknovitch, should be dismissed based on *Durmer* and *Spruill* since the undisputed evidence shows that Plaintiff was, at all relevant times, being treated by the prison medical staff at SCI-Dallas.  Because Plaintiff was being treated by the prison medical staff, the non-medical Commonwealth Defendants (all Commonwealth Defendants except for Harrison, Ginocchetti, Thomas, and Doknovitch) should be dismissed with respect to Plaintiff's Eighth Amendment medical care claim pursuant to *Durmer v.*

_____

[16]Since Plaintiff has stated the position of each of the several Commonwealth Defendants in his Amended Complaint, we shall not repeat their positions herein.  Doc. 18, pp. 3-12.

*O'Carroll,* 991 F.2d 64, 69 (3d Cir. 1993).  *See James, supra,* 230 Fed. Appx. at 198.

The Plaintiff does not allege with any specificity what the personal involvement of Defendants Lavan, Beard, James, Burks, Kelchner, Kazor, Marsella, Griffith, Hildebrand, Bernard, Shaffer, McGrady, Faneck, Leachey, Zaledonis, Burnett, Putnam, Keller, West, Tucker, Smith, Morris, Higgins, Blizzard, Meyers, Gaughan, Martinez, Ryan, McCrone, Zwierzyna, Selvey and Dietrich were with respect to his medical care claim, and with respect to the decisions as to what treatment he should receive.  (Doc. 18, pp. 3-12).   Nor does Plaintiff state their involvement with the medical care he received for his stated conditions.   In fact, Plaintiff does not allege that the stated Commonwealth Defendants denied him proper medical care.   Plaintiff also avers that he was under the care of Defendants Dr. Bohinski and Dr. Stanish as well as the Commonwealth Medical Defendants, Harrison, Ginocchetti and Thomas.   In short, Plaintiff does not specify how the stated Commonwealth Defendants were deliberately indifferent to his safety and his health, nor how these Defendants played a role in the medical care he received at SCI-Dallas.

The *James* Court, 203 Fed. Appx. at 198, stated as follows:

> We also agree with the district court that James failed to state an Eighth Amendment claim against the remaining appellees, Beard, Burks, Ellers, and Tennis. FN2 Because this action is under § 1983, James cannot rely solely on respondeat superior as a theory of liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). These various prison officials and administrators are not physicians, and a non-medical prison official is not charged with deliberate indifference for withholding adequate medical care from a prisoner being treated by medical personnel absent "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill,* 372 F.3d at 236. Once a prison grievance examiner becomes aware of potential mistreatment, the Eighth Amendment does not require him or her to do more than "review [ ] ... [the prisoner's] complaints and verif[y] with the medical officials that [the prisoner] was receiving treatment." *Greeno v. Daley,* 414 F.3d 645, 655

(7th Cir.2005) (citing *Spruill,* 372 F.3d at 236). The evidence presented by James conclusively shows that he received treatment from Dr. Barnes and he simply has not alleged any facts implicating these officials other than that they responded unfavorably to his later-filed grievances. Accordingly, the district court did nor err in dismissing James' Eighth Amendment claims against Beard, Burks, Ellers, and Tennis. (Footnote omitted).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825 (1994) *citing Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976). An inadequate medical care claim, as we have here, requires allegations that the prison official acted with "deliberate indifference to serious medical needs" of the plaintiff, while a prisoner. *Estelle*, 429 U.S. at 104 (1976); *Unterberg v. Correctional Medical Systems, Inc.*, 799 F. Supp. 490, 494-95 (E.D. Pa. 1992). The official must know of and disregard an excessive risk to inmate health or safety. *Farmer,* 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "The question...is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 843.

In order to state a viable Eighth Amendment claim, a prisoner must demonstrate that the Defendant was deliberately indifferent to his medical needs and that those needs were serious. *Estelle*, 429 U.S. at 106.

In the case of *Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988), the Court addressed whether the Plaintiff's alleged injuries rose to the level of being sufficiently serious for the purpose of establishing an Eighth

23

Amendment violation.

   The *Monmouth County* case stated that:

> "A medical need is 'serious,' in satisfaction of the second prong of
> the *Estelle* test, if it is 'one that has been diagnosed by a physician as
> requiring treatment or one that is so obvious that a lay person would easily
> recognize  the necessity for a doctor's attention." *Pace v. Fauver*, 479 F.Supp.
> 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981); *accord
> Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977).  The seriousness of an
> inmate's medical need may also be determined by reference to the effect of
> denying the particular treatment.  For instance, *Estelle* makes clear that if
> 'unnecessary and wanton infliction of pain,' 429 U.S. at 103, 97 S.Ct. at 290,
> results as a consequence of denial or delay in the provision of adequate medical
> care, the medical need is of the serious nature contemplated by the eighth amendment.
> *See Id*, at 105, 97 S.Ct. at 291.  In addition, where denial or delay causes
> an inmate to suffer a life-long handicap or permanent loss, the
> medical need is considered serious. (*Citations omitted*)."

*Monmouth County,* 834 F.2d at 347(3d Cir. 1987).

   In the recent case of *James, supra*, 230 Fed. Appx. at 197-198, the Third Circuit stated:

> Although James may have preferred a different course of treatment,
> his preference alone cannot establish deliberate indifference as such
> second-guessing is not the province of the courts. *See Inmates of Allegheny
> County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979)("[c]ourts will 'disavow
> any attempt to second-guess the propriety or adequacy of a
> particular course of treatment ... (which) remains a question of
> sound professional judgment.' "); *see also White v. Napoleon,* 897 F.2d
> 103, 110 (3d Cir.1990)(doctor's choice of one drug over another is not
> actionable). Further there is no indication that Dr. Barnes' decision was based
> on an ulterior motive beyond routine patient care within the confines of
> the Department's policies. *See Spruill v. Gillis,* 372 F.3d 218, 237
> (3d Cir.2004)(noting that in order to state a deliberate indifference claim, a
> plaintiff should in some way "connect[ ] his factual allegations to the alleged
> mental states" of the defendants); *see also Durmer v. O'Carroll,* 991 F.2d
> 64, 69 (3d Cir.1993)(allegations of a deliberate denial of treatment "motivated
> by non-medical factors" are sufficient to state an Eighth Amendment claim).
> Thus, the district court correctly held that James' allegations could not

constitute deliberate indifference.[17]

The Court in *James, supra*, 230 Fed. Appx. at 197, also stated:

> The standard for cruel and unusual punishment under the
> Eighth Amendment, established by the Supreme Court in *Estelle v. Gamble,*
> 429 U.S. 97, 104, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and its
> progeny, has two prongs: 1) deliberate indifference by prison officials and
> 2) serious medical needs. *See Monmouth County Corr. Inst. Inmates v.*
> *Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987); *see also Rouse v. Plantier,* 182 F.3d
> 192, 197 (3d Cir.1999). "It is well-settled that claims of negligence or
> medical malpractice, without some more culpable state of mind, do
> not constitute 'deliberate indifference.' " *Rouse,* 182 F.3d at 197.
> "Nor does mere disagreement as to the proper medical treatment support a
> claim of an eighth amendment violation." *Lanzaro,* 834 F.2d at 346.
> Grossly negligent behavior, however, can constitute deliberate indifference
> as can a doctor's choice to take an "easier and less efficacious course
> of treatment" in response to a serious medical need. *Id.* at 347.

The only remaining Commonwealth Defendants with respect to Plaintiff's Eighth
Amendment medical care claim are Harrison, Ginocchetti and Thomas, as well as Doknovitch.  We
agree with Commonwealth Defendants (Doc. 200, pp. 2-3) that the medical records submitted by
Defendants demonstrate that all of Plaintiff's medical needs were treated.  (Doc. 184, Ex. C,
attached medical records).  Since Plaintiff's voluminous medical records speak for themselves, and
since we have adopted Commonwealth Defendants' SMF's regarding Plaintiff's Eighth Amendment
medical care claim, we shall not discuss in detail all of the medical care Plaintiff received at SCI-
Dallas.  As we stated above, Defendants have relied upon specific  evidence (Doc. 184, Ex. C and
attached medical records)  to support each and every one of ¶'s 22.-46. of their medical claim
SMF's (Doc. 184, pp. 6-11) as well as Plaintiff's voluminous prison  medical records (Doc. 184,

---

[17]As indicated above, Commonwealth Defendants have submitted a copy of the *James*
case, Doc. 204.

attached to Ex. C, Leskowsky's Declaration), and thus, we have adopted them in their entirety and incorporated them herein by reference.   We agree with Defendants that their SMF's show that Plaintiff received medical care while he was confined at SCI-Dallas for all of his conditions.  (Doc. 185, p. 6).  We also agree with Defendants that the record shows that Plaintiff's complaints only amount to disagreements with the prison medical staff's opinions as to the care he required.  As the *James* Court held, such disputes do not amount to an Eighth Amendment claim.  230 Fed. Appx. at 197-98.

As to Defendant Nurses Harrison and Ginocchetti, and their alleged conduct related to Plaintiff's Eighth Amendment medical claim, Plaintiff testified that these Defendants were liable since they failed to perform their nurse duties by making sure that he received the treatment he felt was required for his submandibular gland condition, which was the removal of the gland.  Simply because Plaintiff felt that this gland condition required the removal of the gland and Defendant Nurses Harrison and Ginocchetti did not ensure that his gland was in fact removed does not establish a violation of Plaintiff's Eighth Amendment rights.  As the *James* Court indicated, Plaintiff's disagreement with his medical care does not amount to an Eighth Amendment violation.
(Doc. 184, Ex. A, NT 48-49).  Further, the decision as to whether Plaintiff's gland condition required surgical removal of the gland was clearly a decision of the doctors, and not the Defendant nurses.

Additionally, as Commonwealth Defendants state in their Reply Brief (Doc. 200, p. 2), Plaintiff has only argued in his Brief that Defendants violated his Eighth Amendment rights since the "drugs given Plaintiff were generic, not brand name, and Plaintiff was refused medical diet." (Doc. 194, p. 10).  As the *James* Court indicated a "doctor's choice of one drug over another is not

actionable." 203 Fed. Appx. at 198 (citation omitted).

Plaintiff submitted evidence and argued (Doc. 194, p. 10) that after his release from prison, his Social Security Disability application for Supplemental Security Income ("SSI") benefits was granted on May 22, 2006 commencing June 22, 2004. (Doc. 191, Ex. 32).  We agree with Commonwealth Defendants that this evidence does not controvert Defendants' evidence consisting of Plaintiff's prison medical records which show that they were not deliberately indifferent to any of his serous medical conditions during his incarceration.  (Doc. 200, p. 2).[18] As stated above, in *Goode*, the Court stated that "the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash, supra*, 2007 WL 2068365.  Simply because Plaintiff was found disabled for performing work after his incarceration with respect to his SSI application does not show that Defendants deliberately failed to give him proper medical care while he was in prison.

Moreover, with respect to Defendant CO West, and Plaintiff's claim that he complained about being housed with a smoking cell mate (Doc. 18, p. 8), as in the *Goode* case, 2007 WL 2068365, we do not find that Plaintiff has met "his burden of pointing to some evidence in the record that creates a genuine issue of material fact regarding his allegations that Defendant violated his Eighth Amendment rights by exposing him to second-hand smoke." Nor do we find any evidence that Defendant Doknovitch and Defendant CO Smith denied Plaintiff his prescribed

---

[18]Plaintiff was found not disabled with respect to his May 25, 2004 DIB application. (Doc. 191, Ex. 32) .

therapeutic diet. (*Id.*, p. 11, p. 9).[19]   Rather, the evidence shows that Plaintiff was placed on the

therapeutic diet list for diabetes and that he was provided with this diet.  (Doc. 184, Ex. C, ¶ 7.).

In fact, as Defendants point out  (Doc. 185, p. 6), in his deposition, Plaintiff admitted that he was

prescribed a therapeutic diet and that he received it.   (Doc. 184, Ex. A, NT 81).  Indeed, Plaintiff

only claimed that his prescribed therapeutic diet did not do anything for gout and hypertension.

Regardless, the diet was prescribed for Plaintiff's diabetes condition as the records show.  The

records also show, and Plaintiff concedes, that he was given his prescribed diet.  Plaintiff's dispute

as to the efficacy of this prescribed diet with respect to his gout and hypertension conditions, does

not establish an Eighth Amendment claim against any Defendant.

We find that Plaintiff has not met the first hurdle of *Estelle, i.e.,* any of the Commonwealth

Defendants  were deliberately indifferent to his medical needs.  We do not find that Plaintiff has

sufficiently refuted Defendants' evidence, which demonstrates that they provided him with

medical care and that none of them personally denied him proper medical care for his conditions.

 Considering all of Defendants' undisputed evidence, and in particular Plaintiff's prison medical

records[20], we find that Plaintiff has failed to prove his Eighth Amendment denial of medical care

claim against any of the Commonwealth Defendants. In short, Plaintiff has not controverted

Defendants' evidence, which shows that they were not deliberately indifferent to his medical needs.

Thus, we agree with Commonwealth Defendants (Doc. 200, p. 3) and shall recommend that their

---

[19]Plaintiff vaguely alleged that Defendant CO Smith "continued to deprive Plaintiff his medically prescribed diet . . . " (Doc. 18, p. 9, ¶ LL.).

[20]We note that portions of Plaintiff's prison medical records were submitted regarding his Social Security disability claim after his release from confinement.  (Doc. 191, Ex. 31).

Summary Judgment Motion with respect to Plaintiff's Eighth Amendment denial of medical care claim be granted.

### 2. First Amendment Access to Court Claim

We now consider Plaintiff's First Amendment access to courts claim. As stated above, we have adopted all of the Commonwealth Defendants' SMF's regarding the facts and evidence pertaining to Plaintiff's First Amendment access to courts claim. (Doc. 184, pp. 11-15). We agree with Commonwealth Defendants' Reply Brief which states that their SMF "establishes ... [that] the prison policies on stationary, postage and storage of records were reasonable and did not operate to deprive Plaintiff of his right of access to courts." (Doc. 200, p. 3).[21]

Plaintiff alleges that his legal files were confiscated which prevented him from pursuing a reconsideration motion with the Third Circuit in an appeal case docketed to C.A. No. 01-1209/2155, (3d Cir.) which he states created difficulty in his pursuit of his instant case docketed in this Court to 03-CV-1728, M.D. Pa., and in pursuing his unspecified appeals of his criminal cases in the Pennsylvania courts. (Doc. 18, p. 13).[22]

---

[21]As noted above, since none of the eight (8) PA Board member and staff Defendants were  alleged to have been personally involved with Plaintiff's First Amendment denial of access to courts claim, we find that these Defendants are entitled to summary judgment with respect to this claim of Plaintiff.  Doc. 18, pp. 7, 11-12.

[22]Plaintiff does not allege that Medical Defendants, Dr. Stanish and Dr. Bohinski, were personally involved with respect to his First Amendment access to courts claim.   Doc. 18, pp. 9-10.   Plaintiff only alleges that Medical Defendants were personally involved with respect to his Eighth Amendment medical care claim.  *Id.*  As noted above, we shall address Plaintiff's Eighth Amendment claims against Medical Defendants in a separate Report and Recommendation.
Further, while Plaintiff seems to have alleged an actual injury with respect to his present case, the fact that this case is still pending more than four years after it was filed belies this claim.

Plaintiff must allege an actual injury regarding his First Amendment denial of access to courts claim. *See O'Connell v. Williams*, 2007 WL 1991563 (3d Cir. 2007). We concur with Defendants that, insofar as Plaintiff claims that he was not given adequate copies, this does not establish a First Amendment denial of access to courts claim. (Doc. 185, p. 8). As the *O'Connell* Court stated:

> The Supreme Court has recognized that "adequate law libraries" are a component of the right of access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

*Id*. at 2007 WL 1991563, * 2. Copying service at the prison is not tantamount to an adequate law library, and Plaintiff does not show how he was actually injured in any of his cases with respect to not having adequate copies. As Defendants state, Plaintiff, as a *pro se* inmate at the relevant time, certainly could have filed handwritten copies of his documents. (*Id*.).

The Court in *Shane v. Fauver*, 209 Fed. Appx. 87, 89 (3d Cir. 2006)(Non-Precedential), stated:

> It is settled that an inmate who alleges a violation of the right of access to the courts must show actual injury. See *Lewis v. Casey,* 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). In this case, Stewart's claim concerns the negative impact on his parole board litigation. As explained by the District Court, the actual injury requirement is not met by every type of frustrated legal claim; constitutional protections are applied only to a prisoner's direct or collateral attack on his or her sentence, or challenges to prison conditions. *Id*. at 354-55, 116 S.Ct. 2174.

At the outset, we find that Plaintiff only alleges the following Commonwealth Defendants were personally involved with respect to his First Amendment access to courts claim: Lavan; Beard; McGrady; Faneck, SCI-Dallas Business Manager; CO West; CO Tucker; Morris; Higgins, Manager

of "I.D. Room;" and Thomas, RN.  (Doc. 18, pp. 2, 4, 6, 8, 9). Thus, we shall recommend that the remaining Commonwealth Defendants, in addition to the eight (8) PA Board member Defendants, be granted summary judgment with respect to Plaintiff's First Amendment access to courts claim, namely, James, Burks, Kelchner, Kazor, Marsella, Griffith, Hildebrand, Bernard, Shaffer, Leachey, Zaledonis, Burnett, Putnam, Keller, Smith, Blizzard, Meyers, Gaughan, Martinez, Ryan, McCrone, Zwierzyna, Selvey and Dietrich.[23]  *See Rode, supra*.

With respect to supervisory Defendants Lavan, Beard, and McGrady, Plaintiff alleges they were personally involved in his First Amendment denial of access to courts claim with respect to their action regarding his grievances.  (Doc. 18, pp. 3, 4, 6 ).  Since, as discussed above, Plaintiff had no constitutional right to file a grievance in the first place, and since he has a court remedy with respect to his claims against Defendants, *i.e.* this civil rights action, we do not find that Plaintiff has even stated a First Amendment access to courts claim against these three supervisory Defendants. *See Weakley, supra*.

That leaves the following Commonwealth Defendants who were alleged to have been involved with Plaintiff's stated First Amendment claim: Faneck, SCI-Dallas Business Manager; CO West; CO Tucker; Morris; Higgins, Manager of "I.D. Room;" and Thomas, R.N.  As to Defendant Faneck, Plaintiff alleged that he denied him access to the courts by "refusing postage for legal mail and copies, causing untimeliness and illegally deducting monies for in forma pauperis accounts of Plaintiff's (sic) beyond 28 U.S.C. §1915(b) limitation requirements."  (Doc. 18, pp. 6-7).  Plaintiff

---

[23]As noted above, the undersigned was not assigned this case at the time Plaintiff's Amended Complaint was screened.

alleges in the present action that Defendant Faneck illegally deducted money from his prison account while he was an inmate at SCI-Dallas regarding funds for postage for legal mail and copies. The Plaintiff seeks, in part, monetary damages for his claims.  (*Id.* at p. 15).  This claim against Defendant Faneck of Plaintiff's Amended Complaint is subject to dismissal for failure to state a claim.

A claim that state officials have deprived a prisoner of personal property does not state a recognizable § 1983 action.  *See Rossiter v. Andrews*, 1997 WL 137195 (E.D. Pa.).  As the Court in *Parratt* stated, "the existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment."  451 U.S. at 542. (quoting *Bonner v. Coughlin*, 517 F. 2d 1311, 1319 (7th Cir. 1975)).  Furthermore, it is not relevant whether the alleged loss of the inmate's property occurred as the result of negligent or intentional conduct.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  In our case, Plaintiff alleges Defendant Faneck "illegally" deducted money from his *in forma pauperis* account and that this was not proper. (Doc. 18, p. 7).

The *Rossiter* Court stated that "Pennsylvania does provide an adequate remedy for inmates whose property has been lost, stolen, or destroyed by prison officials.  Inmate grievance procedures, as well (sic) the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541-8546, are also available to Plaintiff, and provide him with adequate postdeprivation remedies. " *See Iseley v. Horn*, 1996 WL 510090 (E.D. Pa.), *aff'd* 85 F. 3d 612 (3d Cir. 1996) (finding Pennsylvania inmate grievance procedures to be a meaningful post-deprivation remedy for the loss of property by a

corrections officer); *see also Murray v. Martin*, 720 F. Supp. 65 (E.D. Pa. 1989) (noting that a prisoner alleging the intentional theft of his property by a corrections officer may pursue a civil damage action pursuant to the Pennsylvania Political Subdivision Tort Claims Act).   This same conclusion has been reached by courts in other states in which the state Department of Corrections has a policy regarding inmates' claims for lost or damaged property by prison officials.   *See Hubenthal v. County of Winona*, 751 F. 2d 243, 246 ( 8th Cir. 1984) (holding that even unauthorized deprivation of property by state officials does not violate due process requirements if meaningful post-deprivation remedy is available).   *See also Simpson v. Hvass*, 2002 WL 508363 (8th Cir. (Minn.)).

Therefore, Plaintiff has failed to state a viable § 1983 claim with respect to the alleged "illegal" deduction of his prison account money by Defendant  Faneck.

In his deposition, Plaintiff testified with respect to his First Amendment access to courts claim, and he stated that he was not given adequate postage and that he was denied access by Defendant Higgins to his legal materials stored in the prison ID Room.  (Doc. 184, Ex. A, NT 30-31). Plaintiff stated that his allegations constituted an access to courts claim since "If [he] wasn't in prison, I'd have access to courts."  (*Id.*, NT 32).  As to his injury related to his First Amendment access to courts claim, Plaintiff testified as follows:

> Q.    . . . Are you aware today of any specific deadlines in any civil actions that you were not able to meet because you didn't have sufficient postage to mail something to the court?
>
> A.     I can't remember the specific docket numbers.
>
> Q.     Well, other than the docket numbers, can you remember anything about a deadline and any action that you missed because

you didn't have enough postage?

A.      With my civil actions, I've had so many submittals that I can't remember every submittal.

Q.      Okay.  So just so I understand, as you sit here today you can't  - - - without looking through all your papers you can't tell me  - - - you can't recall any instance when you missed a specific deadline because of having  - - -.

A.      I can't give you the factual numbers at the present time.

Q.      Can you tell me anything about the case that you missed the deadline because you didn't have enough postage?

A.      (Indicates no.)

Q.      You have to answer.

A.      No, I can't.  The basic reason for missing deadlines was not being able to get materials to use to respond to the court with.

Q.      But other than docket numbers or the kind of case it was, you can't tell me anything about  - - - or can you tell me anything about  - - -?

A.      They were all civil rights cases.

Q.      Okay.  Other than being civil rights cases, can you tell me anything about the case in which a deadline was missed because you didn't have adequate postage?

A.      Again, I'll repeat my answer.  No, I can't.

(Doc. 184, Ex. A, NT 32-33).

Plaintiff could not state any specific court case which he received a negative ruling as a result of his alleged denial of access to courts, but he stated that they were all civil rights cases and "the basic reason for missing deadlines was not being able to get materials to use to respond to the court with." (*Id.*, NT 33).  We do not find that Plaintiff has  provided any evidence that he suffered an

actual injury with respect to any of his civil rights cases, including the present case, as a result of not having proper postage or not being able to get materials to file responses with the court.  (Doc. 191).

We agree with Defendants (Doc. 185, pp. 8-9), as discussed above, insofar as Plaintiff claims that he was denied access to the courts since he was not given copies and that too much money for postage and copies was deducted from his prison account for these items, that these claims do not establish a First Amendment claim.  To the extent that Plaintiff bases his First Amendment claim on the prison's storage of records policy or the policy regarding storage of excess legal property (*See* Doc. 191, Exs. 27-A to 27-D), and the prison policy regarding no cost stationary to indigent inmates, we also agree with Defendants (Doc. 220, p. 3 and Doc. 185, pp. 10-11) that Plaintiff has not shown how the prison policies caused an actual  injury regarding any of his court cases.[24]

Recently, the Third Circuit again indicated that there was no First Amendment right to subsidized mail.  In the case of *Salkeld v. Tennis*, 2007 WL 2682994, * 1 (3d Cir. 2007)(Non-Precedential), the Court stated:

> An inmate alleging a violation of *Bounds v. Smith,* 430 U.S. 817 (1977), must show an actual injury, a requirement that derives from the doctrine of standing. *Lewis v. Casey,* 518 U.S. 343, 349 (1996). Specifically, the inmate

---

[24]We note that a prison policy manual does not have the force of law and does not rise to the level of a regulation.  *Mercy Catholic Med. Ctr. v. Thompson,* 380 F.3d 142, 154 (3d Cir. 2004).  The Third Circuit has clearly stated "that the agency interpretive guidelines do not give rise to the level of a regulation and do not have the effect of law."  *Id*.  Further, a violation of an internal policy does not automatically rise to the level of a Constitutional violation.  *Whitcraft v. Township of Cherry Hill,* 974 F.Supp. 392, 398 (D.N.J. 1996)(citing *Daniels v. Williams,* 474 U.S. 327, 332-33, 106 S.Ct. 662, 665-66, 88 L.Ed.2d 662 (1986); *Edwards v. Baer,* 863 F.2d 606, 608 (8th Cir.1988); *Jones v. Chieffo,* 833 F.Supp. 498, 505-506 (E.D.P.a.1993)).

must show that the alleged shortcomings in the prison policy "hindered his efforts to pursue a legal claim." *Id.* at 351. *See also Reynolds v. Wagner,* 128 F.3d 166, 183 (3d Cir.1997) (no First Amendment right to subsidized mail). However, the injury requirement is not satisfied by just any type of frustrated legal claim; the legal claim must relate to a direct or collateral challenge to a prisoner's sentence or conditions of confinement. *Lewis,* 518 U.S. at 349 (Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.") (emphasis in original).

Thus, insofar as Plaintiff claims that his First Amendment right to access to courts was deprived since he was not given subsidized copies or postage, he fails to state a claim. *See Salkeld, supra.* We also find that Plaintiff has not presented any evidence to show that any prison policy "hindered his efforts to pursue a legal claim," *i.e.* his civil rights actions. Plaintiff only alleged that by denying him access to his stored files in the ID Room, he could not pursue a Motion for Reconsideration in the Third Circuit which "create[d] difficulty pursuing docket No. 1:-03-01728, pursuance [of] Plaintiff's appeals [of] criminal cases PA Dockets and denial after completion [of] Plaintiff 's PA Judicially imposed sentencing on/or about May 22, 2002." (Doc. 18, p. 13). Plaintiff clearly did not suffer any actual injury regarding his present case, 03-01728, since he succeeded on his appeal with respect to his original complaint, and he then filed his Amended Complaint which is the subject of the present motions. As to his Pennsylvania state court criminal cases, Plaintiff has not presented any evidence of any actual injury regarding his appeals.

While Plaintiff's evidence regarding his First Amendment right to access to courts claim shows that he submitted Inmate Requests to Staff stating that he had active PA State court appeal cases, a U.S. Supreme Court appeal case, and a Third Circuit appeal case (Doc. 191, Exs. 27-A to 27-C), these records do not demonstrate that any of his cases were negatively impacted by his

alleged difficulty in retrieving his excess files stored in the prison ID (property) Room.  Plaintiff's evidence shows that his items which were found to be in excess of the prison's policy, based on fire concerns, as to the amount of items allowed in a cell, were stored in the prison ID (property) Room. (*Id*.). Further, Plaintiff's own evidence shows that he was allowed access to his stored items and could simply request his items stored in the prison ID (property) Room, and in exchange he had to remove a like number of items from his cell and store them in the ID Room. (*Id*.). Prison staff clearly did not care which of Plaintiff's items he kept in his cell as long as he kept within the allowed limit of items. (*Id*., Ex. 27-C).

In any event, as Defendants recognize (Doc. 185, pp. 10, 12), Plaintiff has not established any injury to any of his court cases with respect to his First Amendment access to courts claim and this lack of evidence is fatal to this claim. *See Crum v. Lindsay*, 2007 WL 154314, *5 (M.D. Pa. 2007).

As the Court in *Jones v. Hendricks*, 173 Fed. Appx. 180, 182 (3d Cir. 2006), stated, "actual injury can be demonstrated by showing that Defendants' actions resulted in the 'loss or rejection of a legal claim.'"(citation omitted).  Plaintiff has not shown that his Pennsylvania state court appeals of his criminal convictions were denied as a result of his alleged deprivation of access to these courts or that his civil rights actions were dismissed.  In fact, as stated, Plaintiff testified only that in his unspecified civil rights cases he was not "able to get materials to respond to the court with." (Doc. 184, Ex. A, NT 33).

However, significantly, Plaintiff could not testify as to any case in which a deadline was missed due to Defendants' alleged actions regarding his First Amendment claim. (*Id*.). As the *Jones*

37

Court held:

> We agree with the District Court's conclusion that the defendants are entitled to judgment as a matter of law on this claim. Although Jones's allegations were sufficient to survive dismissal under section 1915(e)(2), Jones has come forth with no other information from which any actual injury is shown and refers only to the conclusory allegations of his complaint. For example, Jones provides no case names, case numbers, dates of the alleged dismissals at issue, or any other specific facts regarding his affected litigation. FN1 He points to nothing in the record showing that there is a genuine issue for trial. We note that the right of access to the courts does not encompass the right to litigate as effectively as he would like once in court. *See Lewis v. Casey,* 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

173 Fed. Appx. 182-183(footnote omitted).

While Plaintiff's evidence indicates that he filed Inmate Requests to Staff in October 2002, requesting permission to retrieve two of his boxes in ID storage, which he stated was required to reply in his appeal case No. 01-1205/2155, we do not find that Plaintiff's evidence shows that his appeal case was dismissed by virtue of his failure to get access to his storage boxes.  (Doc. 191, Ex. 30-A and 30-B).  Plaintiff alleges that he was hindered in his appeal case No. 01-1205/2155 since he could not pursue a reconsideration motion "creating difficulty" in pursuing his present civil rights case, 03-1728, M.D. Pa.  (Doc. 18, p. 13).  However, as stated above, Plaintiff successfully appealed the dismissal of the instant case to the Third Circuit.  (Doc. 40).  Also, since Plaintiff's present case is still a pending case almost four years after he filed his Amended Complaint, we do not find that Plaintiff has shown an actual injury regarding his First Amendment denial of access to courts claim.

Quite recently in an appeal case of Plaintiff in another one of his actions, Civil No. 06-1047, M.D. Pa., the Third Circuit stated, "Atwell was required to allege an actual injury in order to state a First Amendment denial of access to courts claim based upon the taking of his legal papers."

*Atwell v. Metterau*, Appeal Nos. 06-3454 & 06-4322, (3d Cir. 11-28-07), slip op. pp. 4-5(citation

omitted).   In Plaintiff's case *Atwell v. Metterau,* the Court stated that Plaintiff alleged that "his

litigation efforts in several cases were impeded, [however] the dockets for those cases reflect that

one case is still being litigated ... ."  *Id.,* slip op. p. 5.  Similar to Plaintiff's case  *Atwell v. Metterau*,

in the present case, while Plaintiff asserts that his appeal efforts regarding the instant case were

hindered, he was successful in his appeal and this case is still pending.  As to Plaintiff's general claim

that his appeals in his state court criminal cases were hindered (Doc. 18, p. 13), we have found no

evidence presented by Plaintiff showing that he suffered an actual injury in any of his Pennsylvania

appeals cases as a result of any conduct by Commonwealth Defendants.

Therefore, we will recommend that all of the Commonwealth Defendants be granted

summary judgment with respect to Plaintiff's First Amendment denial of access to courts claim.

   *3.  Eighth Amendment Excessive Confinement Claim*

Plaintiff alleges that several of the Commonwealth Defendants were involved in the

improper calculation of his CCP sentences and that they failed to correct the calculation of his

sentences after he complained to them about it.  As a result, Plaintiff alleges that he should have

been released from prison on October 19, 2002, but that he had to serve an illegal sentence

beyond his judicially imposed sentences until his undisputed release date on May 22, 2004.[25]

---

[25]As stated above, Plaintiff originally claimed that he should have been released from
confinement on May 22, 2002.  However, after receiving Defendants' discovery responses,
Plaintiff changed his claim to state that his maximum sentence expired on October 19, 2002.
(Doc. 201, p. 3).

In *Sample v. Diecks*, 885 F. 2d 1099, 1108 (3d Cir. 1989), the Court held that "the Eighth Amendment protects an inmate from being incarcerated beyond the term of his sentence." *Supples v. Burda*, Civil No. 07-1560, M.D. Pa., 10-26-07 Memorandum, slip op. p. 3 (J., Caldwell), 2007 WL 3165537 (M.D. Pa. 2007). Plaintiff is no longer in prison and was released on May 22, 2004. (Doc. 184, Ex. A, NT 12). Plaintiff states his claim as "I was denied absolute liberty interest on or about May 22, 2002 based upon illegal incarceration." (*Id.*, NT 14).[26] Thus, Plaintiff claims that he was illegally incarcerated from October 2002 through May 2004, and he seeks monetary damages for this two-year period. Specifically, Plaintiff seeks $1000 per day from each Defendant for lost compensation "from consulting engineering profession" during his alleged illegal incarceration as well as $4000 per day from each Defendant for "punitive pain and suffering for each day Plaintiff [was] illegally incarcerated beyond completion of judicially imposed sentencing by illegal additional sentence for same conviction." (Doc. 18, p. 15).[27] Insofar as Plaintiff alleges that his Eighth Amendment rights were violated with respect to the failure of prison officials to correctly calculate his CCP sentences and to compute his consecutive sentences according to the

---

[26]As noted, Plaintiff changed the date he claims his maximum sentence expired to October 19, 2002.

[27]Interestingly, while Plaintiff requests compensatory damages of $1000 per day for lost earnings due to his alleged illegal incarceration from May 2002 until May 2004, Plaintiff's own evidence shows that the ALJ in Plaintiff's Social Security disability case found that Plaintiff's "earnings record shows that he doesn't have any significant earnings in any year after 1995." (Doc. 191, Ex. 32, p. 3 of ALJ's 5-22-06 Decision). Thus, Plaintiff cannot recover compensatory damages from Defendants for lost earnings of $1000 per day during the two years he alleges that he was illegally excessively confined in prison if his earnings record indicates that he did not earn wages after 1995. Plaintiff's claim for lost earnings in this case appears to be disingenuous.

sentencing court's orders, we find that Plaintiff has asserted an Eighth Amendment claim.  *See Sample, supra*.  Also, as discussed, Plaintiff has stated the personal involvement of several of the Commonwealth Defendants with respect to this Eighth Amendment claim.[28]  Plaintiff testified that a Pennsylvania statute, namely 19 P.S. § 897, was suspended and that even though it did not apply to the calculation of his CCP sentences, Defendants applied it to his consecutive sentences and arrived at the incorrect total maximum dates regarding his sentences for purposes of his parole date. (Doc. 184, Ex. A, NT 15-16).  Plaintiff elaborated on his Eighth Amendment claim as follows during his deposition:

> A.    I had three consecutive sentences that I was serving the DOC with.
>
> Q.    All from Adams County?
>
> A.    All from Adams County.
>
> Q.    And when were they imposed, do you know?
>
> A.    Prior to my coming to the DOC, which was May 2, 2000. That was SCI Camp Hill.
>
> Q.    Okay.  So in May of 2000, the Court of Common Pleas of Adams County imposed three consecutive sentences?
>
> A.    Prior to that.
>
> Q.    Prior to May of 2000, the Court of Common Pleas of Adams County imposed three consecutive sentences?
>
> A.    Three sentences that were to run consecutively.  They

---

[28]As noted above, Plaintiff has alleged that the eight (8) PA Board Defendants were involved with his Eighth Amendment illegal incarceration claim, but he did not allege that these Defendants were involved with his other two claims, *i.e.* Eighth Amendment denial of medical care claim and First Amendment denial of access to courts claim.

weren't imposed at the same time.

> Q.      Okay.  And how were they miscounted or miscalculated to cause you to serve additional time?

> A.      DOC records in Dallas added minimums and added maximums and said that was the sentence, the point being is when you start a minimum and it completes it, in reference to the new statute, 42 P.A.C.S., Section 9757, all minimums are added together for a total minimum.  Complete the second minimum and the third minimum starts.  Sentences one and two are still running.  If the total minimums have completed the time of maximum one sentence, that sentence is completed.

> Q.      Okay.  So the contention is that the records office at Dallas miscalculated the applicable minimum and maximum dates for these three sentences imposed by the Court of Common Pleas of Adams County; is that right?

> A.      Correct.

(Doc. 184, Ex. A, NT 16-17).

Plaintiff testified as to why he named all of the Commonwealth Defendants as parties in his present case, and he stated:

> Q.      . . .  Are all those Defendants sought to be held liable in this case because they either didn't correct the calculation of the sentence as you requested them to do or didn't answer your grievances about that sentence?  Do you understand what I'm asking?

> A.      Yes.  I filed a grievance procedure as the only administrative remedy I had available.

> Q.      Right.

> A.      It was denied.  Everybody that was listed I had personally told or written that I was being illegally incarcerated and they all ignored it or the grievances responded to him but  - - -

> Q.      Or didn't correct it to your satisfaction?

42

A.      Didn't even look into it.

Q.      Okay.

A.      Just said their records were right.

(Doc. 184, Ex. A, NT 23).

As the Third Circuit Court held in *Sample v. Diecks*, 885 F. 2d 1099 (3d Cir. 1989), "a prisoner incarcerated past the expiration of his sentence has a cause of action under § 1983 for deprivation of Eighth Amendment rights." *Homoki v. Northampton County*, 86 F. 3d 324 (3d Cir. 1996).

In our case, Plaintiff alleges that the length of his sentences and the term of his confinement has been lengthened by two years since Defendants "Miscalculated the applicable minium and maximum dates for [Plaintiff's] three [consecutive] sentences imposed by the [CCP]." (*Id*., NT 17). Plaintiff also seems to claim that Defendants failed to correct the calculation of the applicable minimum and maximum dates with respect to his three CCP consecutive sentences after he advised them of the error *via* Inmate Requests to Staff, grievances and appeals (Doc. 191, Exs. 24-A to 24-J and Exs. 25-A to 25-J), and as a result, he was not released when all of his sentences should have expired in October 2002.  Plaintiff states that he thus had to serve almost two more years on his state sentences which was not ordered by the court.  Plaintiff alleges that his term of incarceration was improperly extended since his applicable minimum and maximum dates for his sentences were not properly calculated.  Plaintiff states that his maximum sentences did not expire on May 22, 2004 as the Commonwealth Defendants determined.  As stated, we deem Plaintiff as raising an Eighth Amendment claim that he was wrongfully imprisoned beyond the expiration of his maximum

43

sentence dates.

The Court in *Douglas v. Murphy*, 6 F. Supp. 2d 430, 431-432 (E.D. Pa. 1998), stated as follows:

> The detention of a prisoner beyond the termination of his sentence can state an Eighth Amendment violation if that detention occurs without penological justification. *See Moore v. Tartler*, 986 F.2d 682, 686 (3d cir. 1993). In order to establish § 1983 liability in such a case, a plaintiff must demonstrate three elements:
>
>> First, a plaintiff must demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances, indicating that his/her response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must show a causal connection between the official's response to the problem and the unjustified detention.
>
> *Id*. at 686, citing *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989).
>
>> In evaluating a plaintiff's case, "[a]mong the circumstances relevant to a determination of whether the requisite attitude (deliberate indifference) is present are the scope of the official's duties and the role the official played in the everyday workings of the prison." *Id*. at 686. Moreover, not every official who is aware of a problem will be found to exhibit deliberate indifference by failing to resolve it. *See id*. A court may find the requisite deliberate indifference in cases where prison officials were put on notice of a prisoner's dispute and then refused to investigate the claim of miscalculation, or where the investigation was so inept and ineffectual that it demonstrates deliberate indifference. *See id*. at 686-87.

Defendants recognize the required elements of an inmate's Eighth Amendment claim brought under § 1983 that he was incarcerated beyond his maximum sentence date. (Doc. 185,

p. 13).

In the instant case, Plaintiff has alleged that many of the named Commonwealth Defendants were personally involved in the calculation of his sentences, and in the determination of his minimum and maximum dates of his sentences.  Plaintiff also states that some of these Defendants did not properly respond to his grievances regarding his excessive confinement claim and that they refused to investigate his claim or that they conducted an ineffective investigation.  Further, Plaintiff has  alleged a causal connection between the responses to his grievances and his appeals by Defendants and his failure to be released when he thought his sentences were fully served.  Thus, Plaintiff has alleged the three required elements, stated above, against the Commonwealth Defendants to state a cognizable Eighth Amendment claim of excessive detention.  However, we agree with Defendants that the record shows that Plaintiff was not made to serve more time in prison than directed by his CCP sentences.  (*Id.*, pp. 14-15).

Defendants address the merits of Plaintiff's Eighth Amendment excessive confinement claim in their Brief (*Id.*), and state as follows:

> [I]t is apparent that the operative sentences when plaintiff was released in 2004 were the three consecutive sentences at county docket numbers CC-97-99, CC-1050-00 and CC-706-00.  This is so because on March 21, 2001, plaintiff was sentenced to not less than three months nor more than eighteen months under Adams County docket number CC-706-00; this sentence was to be served consecutively to the not less than six month nor more than twenty four month sentence under CC-1050-00.
>
> Because the sentence under CC-706-00 was to be consecutive to the sentence under CC-1050-00 (which was consecutive to the sentence under CC-97-99), at that point plaintiff was serving a not less than fifteen month (six months under CC-97-99 + six months under CC-1050 + three months under CC-706-00 = fifteen months)

nor more than sixty-six month (twenty four months under CC-97-99 +
twenty four months under CC-1050-00 + eighteen months under
CC-706-00 = sixty-six months) sentence.  When the not less than
three month nor more than eighteen month sentence under
CC-706-00 was added to the CC-97-99 and CC-1050-00 sentences,
the effective date error was not caught and the Department continued
to list plaintiff's effective date as May 22, 2000 instead of April 19, 2000.
The new minimum sentence expiration date was May 22, 2001 and the
maximum sentence expiration date was May 22, 2004.  The May 22, 2001
and May 22, 2004 sentence dates were the result of a calculation error
as the additional not less than three month nor more than eighteen month
sentence for CC-706-00 (to be served consecutive to CC-1050-00) was
not added on to the minimum and maximum sentence expiration dates.
All three sentences  - - CC-97-99, CC-1050-00 and CC-706-00 - -
were to be served consecutively to each other, resulting in a total
sentence of not less than fifteen months nor more than sixty six months.

(*Id.*, pp. 14-15).  We find that Commonwealth Defendants' evidence substantiates their calculation

of Plaintiff's sentences as stated in their Brief. (Doc. 184, Ex. B, Yale Declaration and attachments

thereto, Yale exhibits 1-6).  We do not find a genuine issue of material fact with respect to Plaintiff's

Eighth Amendment excessive confinement claim.

Moreover, Plaintiff has not proven any required deliberate indifference on the part of any

named Commonwealth Defendant.  Nor has Plaintiff proven that he was illegally incarcerated for

two years beyond his maximum sentence dates.  Further, even if Plaintiff did establish that he was

excessively confined, and we do not find that he has, as this Court held in *Supples*, such an Eighth

Amendment claim seeking injunctive relief as well monetary damages, is *Heck*-barred.

This Court in *Supples* stated:

In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383
(1994), the Supreme Court clarified the interplay between habeas and
civil-rights claims.  The Court ruled that a section 1983 claim for
damages does not accrue "for allegedly unconstitutional conviction
or imprisonment, or for other harm caused by actions whose

46

unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87, 114 S.Ct. at 2372, 129 L.Ed.2d at 394 (footnote omitted).

*Heck* has been extended to requests for declaratory and injunctive relief. *See Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (*Heck* bars a section 1983 action seeking damages and declaratory relief which challenges a prison disciplinary hearing forfeiting good-time credits). As the Court explained in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (emphasis in original): "a state prisoner's § 1983 action is barred (absent prior invalidation) - <u>no matter the relief sought </u>(damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration." As the Third Circuit has summarized the holding of *Heck*: "where success in a § 1983 action would implicitly call into question the validity of conviction or duration of sentence, the plaintiff must first achieve favorable termination of his available state or federal habeas remedies to challenge the underlying conviction or sentence." *Williams, supra*, 453 F.3d at 177 (Emphasis added).

*Supples, supra*, slip op. pp. 6-7, 2007 WL 3165537, * 3.

This Court further stated in *Supples*:

*Heck's* favorable-termination rule applies here because Plaintiff's complaint calls into question the correctness of the DOC's calculation of the 144-day credit ordered by the sentencing court and in turn the correct duration of his confinement. *See, e.g., Benson v. New Jersey State Parole Board*, 947 F.Supp. 827, 833 (D.N.J. 1996) (*Heck* bars a section 1983 claim seeking declaratory relief and punitive damages premised on the denial of a timely parole hearing and the allegedly erroneous calculation of a parole eligibility date until the plaintiff succeeds in a state appellate court or a federal habeas proceeding). The favorable-termination rule applies to

> Eighth Amendment claims under *Sample, supra*, barring such claims
> until the plaintiff's purported confinement beyond his maximum
> sentence "has been invalidated by state authorities, the state courts
> or by issuance of a writ of habeas corpus." *Owens v. Ortiz*, No. 05-2351
> (WGB), 2005 WL 1199066, at * 3 (D.N.J. May 19, 2005); *Mosch v.
> Brown*, No. 06-4067 (JLL), 2006 WL 2711637, at * 3-4 (D.N.J.
> Sept. 20, 2006) (damages claim for confinement in excess of
> plaintiff's maximum term not cognizable under *Heck* when plaintiff
> failed to aver that the confinement had been deemed excessive
> by a state court or by a successful habeas petition); *see also Romano v.
> Taylor*, No. 06-573 JFF, 2006 WL 2993231, at * 2 (D.N.J. Oct. 20, 2006)
> (claim that plaintiff's housing level has illegally extended his term of
> confinement not cognizable under section 1983 until a state tribunal
> or a federal habeas court has declared the confinement illegal, noting
> *Sample*).

*Supples, supra*, slip op. pp. 7-8, 2007 WL 3165537, * 3.

Here, Plaintiff contends that the Eighth Amendment was violated because he was confined longer than ordered by the CCP for almost two years because his sentences imposed by the state court were not computed properly by the Commonwealth Defendants and since they could not aggregate his minimum and maximum sentences under Pennsylvania law on his consecutively imposed sentences. Defendants concede that an error occurred with respect to listing the effective date for Plaintiff's CCP sentences on his DOC sentence status sheets. (Doc. 200, p. 4). However, Defendants' evidence shows that this error did not result in requiring Plaintiff to be confined in prison longer than was ordered by the CCP. As averred in the Diane Yale Declaration of March 23, 2007:

> After the May 22, 2000 sentencing, the Department listed
> Mr. Atwell's minimum sentence expiration date as May 22, 2001 and
> the maximum sentence expiration date as May 22, 2004. This was
> an error, as the effective date for all of Mr. Atwell's sentences was
> April 19, 2000 – the date he was paroled from all Adams County
> sentences except CC-754-98 and CC-97-99.

48

(Doc. 184, Ex. B, ¶ 12.).

Yale also avers in her Declaration that when Plaintiff was released from SCI-Dallas on May 22, 2004, "he was actually released one year, four months and twenty-seven days before the maximum expiration date of his sentence."   (Doc. 184, Ex. B, ¶ 17.).

Finally, we agree with Defendants that they could aggregate Plaintiff's minimum and maximum sentences under Pennsylvania law on his consecutively imposed sentences.   (Doc. 200, p. 4).  Defendants cite to the case of *Com. Ex rel. Smith v. PA DOC*, 829 A. 2d 788, 793  (Pa. Cmwlth. Ct. 2003), in which the court stated:

> With respect to Gillespie's challenge to the legality of the aggregation, this Court noted that "[o]ur reading of the statute and interpretative case law compels us to conclude that once the sentencing court imposes a consecutive sentence, aggregation with other consecutive sentences is automatic and mandatory under 42 Pa.C.S. § 9757" *Id.* at 1065(*Gillespie v. Department of Corrections,* 106 Pa.Cmwlth. 500, 527 A.2d 1061 (1987)).

> Here, as in *Gillespie,* 42 Pa.C.S. § 9757 applies to sentences imposed on different occasions, and his sentence on the VUFA offense was ordered to run consecutively to the sentence he was already serving. As a result, Respondent properly aggregated Smith's sentences, and he has failed to establish a clear legal right to relief.

Thus, according to *Gillespie and Smith*, the Commonwealth Defendants did properly aggregate Plaintiff's CCP sentences.  We do not find that Plaintiff cites to any Pennsylvania cases which are contrary to *Gillespie and Smith* and which prohibited Defendants from aggregating the minimum and maximum expiration dates of his consecutive three sentences imposed by the CCP on different dates.  (Doc. 209, p. 5).  Nor do we find that Plaintiff distinguishes the holding in *Gillespie* from his case by arguing that this case only pertained to inmates who, unlike himself, were

on probation or parole.  (*Id.*, pp. 5-6).  The *Smith* Court clearly stated that "once the sentencing court imposes a consecutive sentence, aggregation with other consecutive sentences is automatic and mandatory under 42 Pa. C.S. §9757." 829 A. 2d at 793(citation omitted).  The *Smith* Court also held that "42 Pa. C.S. §9757 applies to  sentences imposed on different occasions ... ."  *Id.*

The required elements to state a § 1983 cause of action under the Eighth Amendment for an excessive confinement a claim have been discussed above.  We agree with Defendants and find that they are entitled to summary judgment with respect to this Eighth Amendment claim of Plaintiff.[29]

Accordingly, we will recommend that the Commonwealth Defendants' Summary Judgment Motion (Doc. 183) be granted with respect to all of Plaintiff's claims against them, and that judgment be entered in favor of all of the  Commonwealth Defendants and against Plaintiff.  Since we have found merit to Commonwealth Defendants' Summary Judgment Motion with respect to the claims against them, we shall recommend that Plaintiff's cross-Summary Judgment Motion as against these Defendants (Doc. 188) be denied.

## V.  Recommendation.

Based on the above, it is respectfully recommended that the Commonwealth Defendants' Summary Judgment Motion **(Doc. 183)** be granted with respect to all of Plaintiff's claims against them, and that judgment be entered in favor of all of the Commonwealth Defendants and against

---

[29]Based on *Gillespie* and *Smith*, the Commonwealth Defendants clearly were not deliberately indifferent to Plaintiff's complaints to them that his three consecutive CCP sentences should not have been aggregated.

Plaintiff.[30]  We also recommend that Plaintiff's cross-Summary Judgment Motion as against the

Commonwealth Defendants **(Doc. 188)** be denied.

 

 

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: December 21, 2007**

---

[30]As noted above, we have included Defendant Dougherty as one of the Commonwealth
Defendants.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GEOFFREY W. ATWELL,            :        CIVIL ACTION NO. **1:CV-03-1728**
                               :
            Plaintiff          :        (Judge Rambo)
                               :
            v.                 :        (Magistrate Judge Blewitt)
                               :
SUPERINTENDENT T. LEVAN, et al.,  :
                               :
            Defendants         :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **December 21, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


                                                    s/ Thomas M. Blewitt
        _____    THOMAS M. BLEWITT
                                                    United States Magistrate Judge


**Dated: December 21, 2007**