IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEOFFREY W. ATWELL, | : | CIVIL ACTION NO. **1:CV-03-1728** |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| SUPERINTENDENT T. LAVAN, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On September 30, 2003, Plaintiff, Geoffrey W. Atwell, a *pro se* litigant, filed this civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Plaintiff Atwell filed this action while he was in prison at SCI-Dallas.  As the Third Circuit Court stated in its June 23, 2005 Opinion issued in Plaintiff's appeal of the District Court's Order dismissing this action (Doc. 22), "While in prison, Atwell filed a complaint under 42 U.S.C. § 1983 against 86 Defendants alleging that he was being held in custody beyond the expiration of his sentence, and that he was denied access to ths courts and necessary medical care."  (Doc. 40-2, p. 2).  We consider the Summary Judgment Motion of Defendants Stanish and Bohinski in this Report and Recommendation.  **(Doc. 187)**.  As indicated below, and as stated in our December 21, 2007 Report and Recommendation (Doc. 238), we have found that Plaintiff only alleges the personal involvement of Defendants Dr. Stanish and Dr. Bohinski with respect to his Eighth Amendment denial of proper medical care claim.

On January 20, 2004, Plaintiff filed an Amended Complaint. (Doc. 18).[1] As stated, the District Court initially dismissed this case on May 3, 2004. (Doc. 22). After Plaintiff's appeal to the Third Circuit, this case was re-opened. (Doc. 40). The Plaintiff's Amended Complaint was then screened. (Doc. 49). The District Court dismissed fourteen (14) of the fifty-four (54) named Defendants in the amended pleading. (Doc. 55). Plaintiff's request to proceed *in forma pauperis* was granted. (Doc. 55). Plaintiff's Amended Complaint was then served on the remaining forty (40) Defendants.[2] Discovery has been completed, including Plaintiff's deposition, and both set of the remaining Defendants have filed dispositive motions. Plaintiff has filed a cross-Summary Judgment Motion as against both sets of remaining Defendants.

The District Court has held that Plaintiff is proceeding on his Amended Complaint in this case. (Doc. 55).[3] The two physician Defendants, Dr. Stanish and Dr. Bohinski ("Medical

---

[1] A copy of Plaintiff's Amended Complaint is attached as an exhibit to Medical Defendants' Brief in support of their Motion for Summary Judgment, Doc. 192, Ex. A.

[2] The remaining Defendants have been classified into two separate groups, namely, the thirty-seven (37) Commonwealth Defendants and the two (2) Medical Defendants. We note that the other Defendant who was served with Plaintiff's Amended Complaint, namely Defendant Gallagher, was previously dismissed from this case. (Doc. 108).

[3] Plaintiff's Amended Complaint was dismissed by the District Court on May 3, 2004. (Doc. 22). However, Plaintiff appealed, and the Third Circuit reinstated this case on June 23, 2005. (Doc. 40). The previously assigned Magistrate Judge then screened Plaintiff's Amended Complaint, Doc. 18, and recommended that fourteen (14) of the fifty-four (54) Defendants named therein be dismissed. The District Court agreed and dismissed fourteen (14) Defendants. (Doc. 55). The forty (40) remaining Defendants were served with Plaintiff's Amended Complaint. Subsequently, the Motion to Dismiss of Defendant Kelly Gallagher, P.A., a physician's assistant at SCI-Dallas, Doc. 71, was granted. (Doc. 108).

By separate Report and Recommendation dated December 21, 2007, we have recommended that the thirty-seven (37) Commonwealth Defendants' Summary Judgment

Defendants"), have jointly filed a Summary Judgment Motion on April 2, 2007.  **(Doc. 187)**.

Plaintiff filed a cross-Summary Judgment Motion as against the Medical Defendants and the

Commonwealth Defendants on April 2, 2007.  **(Doc. 188).**  Both Medical Defendants' Summary

Judgment Motion and Plaintiff's cross-Summary Judgment Motion have been briefed and exhibits

have been submitted by the parties.  (Plaintiff's Summary Judgment Motion, Docs. 188, 189, 190

and 191.  Medical Defendants' Summary Judgment Motion, Docs. 187, 192, 193, 195, 217).  Both

Plaintiff and Medical Defendants have opposed each other's Summary Judgment Motions.  Thus,

the Summary Judgment Motions of Medical Defendants (Doc. 187) and of Plaintiff (Doc. 188) are

ripe for disposition.

       In this case, Plaintiff is basically claiming that Defendants made him serve an illegal

additional sentence for the same crimes beyond the maximum sentences imposed by the Adams

County Court ("CCP"), which he claims should have expired on October 19, 2002.  Plaintiff was

released from confinement on May 22, 2004.  Plaintiff states that this excessive confinement

beyond the sentences imposed by the CCP violates the Double Jeopardy Clause.[4]  In an August

21, 2006 Brief in support of his Motion for Protective Order regarding  his deposition, Plaintiff

stated that his "main claim [was] of illegal incarceration" by Defendants in violation of the

Constitution.  (Doc. 163, ¶ 2.).  Plaintiff repeated that "illegal incarceration is the main concern" of

---

Motion be granted.  (Doc. 238).  If our December 21, 2007, Report and Recommendation is
adopted by the District Court, then the only remaining Defendants in this case will be Dr.
Stanish and Dr. Bohinski.

       [4]As discussed in our December 21, 2007 Report and Recommendation (Doc. 238),
Plaintiff's excessive confinement claim is an Eighth Amendment claim.

his action.  (*Id*., foll. ¶ 6.).[5]

In his amended pleading (Doc. 18), Plaintiff named fifty-four (54) Defendants.  However, as stated, the District Court dismissed fourteen (14) of those Defendants.  Thirty-nine (39) Defendants now remain in this case.  (Docs. 55, 62, and 108).  Service has now been completed on all Defendants.  All of the remaining Defendants have filed Motions for Summary Judgment, and Plaintiff has filed a cross-Summary Judgment Motion.[6]  Discovery has now been completed, including  the deposition of Plaintiff.

On January 23, 2006, Defendant Kelly Gallagher, P.A., a physician assistant at SCI-Dallas, filed a Motion to Dismiss the Plaintiff's Amended Complaint as against her.  (Doc. 71).  The District Court granted this Motion on March 13, 2006 (Doc. 108).[7]

---

[5]Plaintiff is a former inmate at the State Correctional Institution at Dallas, Pennsylvania ("SCI-Dallas").  His present Eighth Amendment denial of proper medical care claim against Medical Defendants occurred during his incarceration at SCI-Dallas.  Plaintiff contends that he was denied proper medical care by Medical Defendants during the period of October 2002 through May 2004.

[6]Defendant Dougherty was served with Plaintiff's Amended Complaint (Doc. 82), but his name was not listed a a Commonwealth Defendant in Doc. 183, the Commonwealth Defendants' Summary Judgment Motion.  As indicated in our December 21, 2007 Report and Recommendation, we find that Defendant Dougherty, an employee of the Pennsylvania Parole Board, was inadvertently not listed as a Commonwealth Defendant in their Summary Judgment Motion.

[7]We note that Plaintiff has filed other actions with this Court, including Civil Nos. 06-1047 and 06-1048, M.D. Pa.  In Plaintiff's cases Nos. 06-1047 and 06-1048, M.D. Pa., and in his present case (Doc. 142), Plaintiff moved to recuse the District Court Judge under 28 U.S.C. §§ 144, 455(a) and (b)(1).  Plaintiff's Recusal Motions were denied in these cases, and his appeals to the Third Circuit of this Court's denial of his Motions to Recuse were of no avail.  *See* Appeal No. 06-3152, C.A. 3d Cir., and Appeal Nos. 06-3454, 06-4322 and 06-3455.

On March 7, 2006, Defendant Dr. Bohinski filed his Answer to Plaintiff's Amended Complaint. (Doc. 102).[8]

On June 6, 2006, Defendant Stanley Stanish, M.D., filed a Motion to Dismiss the Plaintiff's Amended Complaint. (Doc. 137). Defendant Stanish also filed a support Brief on June 15, 2006. (Doc. 147).[9] Plaintiff filed his opposition Brief with 34 exhibits on August 14, 2006. (Doc. 159).[10] On September 25, 2006, Defendant Stanish filed a Reply Brief. (Doc. 168). The matter was ripe for disposition.[11]

On September 28, 2006, we issued a Report and Recommendation (Doc. 169) in which we recommended that Defendant Stanish's Motion to Dismiss (Doc. 137) be granted with respect to the conspiracy claim raised against him in Plaintiff's Amended Complaint, and that it be denied with respect to the denial of medical care claims against him under the Eighth Amendment. It was also recommended that this case be remanded to the undersigned for further proceedings, including

---

[8]Attorney Piazza filed Dr. Bohinski's Answer to Plaintiff's Amended Complaint. Subsequently, the attorney for Dr. Stanish, Attorney Gold, also entered his appearance for Dr. Bohinski. (Doc. 136). Presently, both Attorney Piazza and Attorney Gold represent Dr. BOhinski. Dr. Stanish is represented only by Attorney Gold. (Doc. 193, p. 1, n. 1).

[9]The other Medical Defendant, Dr. Bohinski, did not join with Defendant Stanish in his Motion to Dismiss. (Doc. 137).

[10]Plaintiff's Table of Exhibits attached to his Brief (Doc. 159) listed numerous exhibits. Plaintiff attached several exhibits to his Brief, Doc. 159, which largely consisted of copies of his prison medical records and his Inmate Requests to Staff and grievances. Some of Plaintiff's requests and grievances pertain to his requests for a medical diet and for removal of his submandibular gland.

[11]This case has been re-assigned to proceed before the undersigned for pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

directing Defendant Stanish to file his Answer to Plaintiff's Eighth Amendment claims against him. Plaintiff filed Objections to our Report and Recommendation. (Doc. 170).

On November 2, 2006, the District Court issued an Order and adopted our September 28, 2006 Report and Recommendation. (Doc. 171). Defendant Dr. Stanish filed his Answer to Plaintiff's Amended Complaint on November 10, 2006. (Doc. 172).

Discovery was then conducted, including Plaintiff's deposition of August 25, 2006. (Doc. 192, Ex. B). Discovery then concluded. As stated, Medical Defendants jointly filed a Summary Judgment Motion, and Plaintiff filed a cross-Summary Judgment Motion. (Docs. 187 and 188, respectively).[12]

Medical Defendants argue that the undisputed evidence does not substantiate Plaintiff's Amended Complaint as against them. They contend that the evidence fails to show that they knew their conduct presented a substantial risk of harm to Plaintiff and that they were deliberately indifferent to any of Plaintiff's serious conditions with respect to his Eighth Amendment inadequate medical care claims asserted against them. Thus, they argue that they did not violate any of Plaintiff's Constitutional rights. (Doc. 187, pp. 3-6). Medical Defendants contend that Plaintiff does not prove that they [Stanish and Bohinski] knew that their conduct presented a substantial risk of harm to Plaintiff, and therefore, they argue that Plaintiff fails to establish an Eighth Amendment denial of proper medical care claim as against them. (*Id*., pp. 5-6). Defendants maintain that at

---

[12]It was noted in the Summary Judgment Motion of Medical Defendants that Defendant Bohinski is represented by both Attorney Gold and Attorney Piazza, and that the Summary Judgment Motion on his behalf was filed by both counsel. (Doc. 187, p. 2, n. 1).

best, Plaintiff has only showed that he had disagreements with them as to his proper medical care. (*Id.*, p. 4).

As their last argument, Medical Defendants assert that Plaintiff has failed to exhaust his DOC Administrative remedies with respect to his claims against them.   (Doc. 192, pp. 14-15). Defendants state that "[a]t no time prior to the filing of either his original Complaint on September 30, 2003, or his Amended Complaint on January 20, 2004, did Atwell exhaust his available Administrative remedies as against either Dr. Bohinski or Dr. Stanish."  (*Id.*, p. 14).

We have reviewed the evidence submitted by the parties, in particular Doc. 192, Ex. J, Plaintiff's undisputed prison Administrative remedies records and Plaintiff's deposition testimony (Doc. 192, Ex. B), as well as Plaintiff's own evidence, Doc. 191, Exs. 24, *et seq.* and 25, *et seq.*, and find that there is no genuine issue of material fact that Plaintiff did not exhaust his Eighth Amendment deliberate indifference medical care claims  against Defendants Stanish and Bohinski as required by the Prison Litigation Reform Act of 1995 ("PLRA").  We find that Medical Defendants

are entitled to the granting of their Summary Judgment Motion based on Plaintiff's failure to exhaust his Administrative remedies.[13]

---

[13]In Defendant Dr. Bohinski's Supplemental Memorandum for Summary Judgment (Doc. 195), he argues that he is also entitled to summary judgment since Plaintiff did not provide a Certificate of Merit ("COM") or an expert report with respect to his present Eighth Amendment claims against him.  In his Supplemental Memorandum, Defendant Bohinski argues that Plaintiff has failed to comply with Pa. R.C.P. 1042.3 since he did not file a COM within 60 days of filing his Complaint.  Defendant also argues that Plaintiff has failed to allege his [Defendant's] deliberate indifference to a serious medical condition and thus, Plaintiff has not stated an Eighth Amendment claim against him.  Rather, Defendant argues that Plaintiff has only stated a negligence claim against him arising to a medical malpractice action.  (Doc. 195).  We disagree, and find that Plaintiff has stated an Eighth Amendment denial of proper medical care claim against both Medical Defendants.  This Court has previously found that Plaintiff has stated an Eighth Amendment claim against Dr. Stanish. (Docs. 169 and 171).  Defendant Dr. Stanish did not join in Dr. Bohinski's Supplemental Motion for Summary Judgment, seemingly since this Court has previously found that Plaintiff has stated an Eighth Amendment denial of proper medical care claim against him.  We also find that Plaintiff has stated an Eighth Amendment claim against Defendant Bohinski.

Essentially, a COM must be filed for a Pennsylvania State professional negligence claim or the claim will be dismissed.  *Velazquez v. UPMC Bedford Memorial Hospital*, 328 F. Supp. 2d 549, 558 (W.D. Pa. 2004).  The *Velazquez* Court stated that:

> [T]he Pennsylvania Certificate of Merit Rule, 1042.3, also
> requires that a plaintiff provide a written statement by
> "an appropriate licensed professional" that a "reasonable
> probability" exists that a "licensed professional deviated
> from an acceptable professional standard."  Pa.R.Civ.P. 1042.3.
> In addition, Pa.R.Civ.P. 1042.3 requires that the certificate
> of merit be filed within 60 days of the filing of the complaint.

*Id.* at 556.

Further, Pennsylvania COM "requires a written statement of an appropriate licensed professional who will usually be a physician."  *Id.*  "If a Plaintiff does not file a certificate of merit pursuant to Pa.R.Civ.P. 1042.3, then Pa.R.Civ.P. 1042.6 provides that an entry of judgment of non pros may be entered against the Plaintiff for failure to file the certification."  *Id.*

Additionally, the *Velazquez* Court stated that:

> Pa.R.Civ.P. 1042.3(a)(1) dictates that a "written statement [must be filed] that there exists a reasonable probability" that the defendant's care, skill, or knowledge fell outside acceptable professional standards. "The attorney's signature certifies that an appropriate licensed professional has supplied a written statement that there is a basis to conclude that the care, skill, or knowledge exercised or exhibited by the Defendant in the treatment, practice, or work that is the subject of the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm." Pa.R.Civ.P. 1042.3(a)(1). Thus, the purpose of Pa.R.Civ.P. 1042.3 is to ensure that professional negligence claims are meritorious, and the certificate of merit requirement prevents needless waste of judicial time and resources which would otherwise be spent on non-meritorious claims.

*Id.* at 557-558.

According to the *Velazquez* Court, Rule 1042.6 requires dismissal for failure to timely file a COM. *Id.* at 556. The *Velazquez* Court then summarized the COM requirement as follows:

> Pa.R.Civ.P. 1042.1 *et seq.* "were designed and adopted to directly confront the crisis surrounding medical malpractice claims in this Commonwealth." *Hoover v. Davila*, 64 Pa.D. & C4th 449, 455-56 (Pa.Com.Pl. 2003). To further this end, Pa.R.Civ.P. 1042.3 requires a plaintiff to file a certificate of merit verifying that a licensed professional has determined that a reasonable probability exists that a licensed professional did deviate from the requisite standard of care with regard to the plaintiff. However, where a plaintiff fails to file a certificate of merit within the allotted time, a defendant may file a praecipe of non pros which dismisses the plaintiff's claim for failure to file a certificate of merit. Pa.R.Civ.P. 1042.6; *Hoover v. Davila*, 64 Pa.D & C. 4th 449 (Pa.Com.Pl. 2003) (holding that Pa.R.Civ.P. 1042.6(a) is "clear and concise" in that if the defendant "files a praecipe after the required time and prior to the filing of the certificate of merit, the prothonotary is required to enter the judgment of non pros".)

## II. Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[14] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

---

*Id*. at 559-560.

In the present case, there is no dispute that Defendant Bohinski filed his Supplemental Memorandum for Summary Judgment based on Plaintiff's failure to file a COM well after Plaintiff filed this action. Further, we do not find it necessary for Plaintiff to have filed a COM since, as Plaintiff states (Doc. 203, pp. 2-3), he is not proceeding on a medical malpractice claim against Defendant Bohinski; rather, he is proceeding under the Eighth Amendment, pursuant to § 1983, as against Defendant Bohinski.

Since Plaintiff, in the instant action, has been allowed to proceed with respect to his Eighth Amendment claim against Defendant Stanish, which we find to be similar to his claim against Dr. Bohinski, we do not concur with Defendant Bohinski that this action is also presently proceeding on any professional liability claim arising under state law. We find that this case is proceeding with respect to Plaintiff's § 1983 claim that his Eighth Amendment rights were violated by Defendant Bohinski. Thus, we find no merit to Dr. Bohinski's Supplemental Memorandum for Summary Judgment (Doc. 195).

[14]Plaintiff alleges in his amended pleading that Defendant Bohinski was a physician employed by SCI-Dallas and that Defendant Stanish was the supervisory physician for SCI facilities, Eastern area, including SCI-Dallas. (Doc. 18, pp. 9-10, ¶ PP. and ¶ QQ.). This is sufficient to show that these Defendants were state agents for purposes of § 1983.

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id*.  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id*.  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.  *Id*.  With these principles in mind, Plaintiff's allegations with respect to the Defendants will be discussed.

### III.  Motion for Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the

nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id.* The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Moreover, the Third Circuit has recently indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

**IV. Allegations of the Amended Complaint Against Defendants Dr. Bohinski and Dr. Stanish.**

In his Amended Complaint, Plaintiff alleges as follows with respect to Defendant Dr. Bohinski:

> PP.   Stanley Bohinski, PA D.O.C. SCI Dallas (same address as III A.)
> M.D. who has, since November, 2002, acted in deliberate
> indifference responding to Plaintiff's serious medical needs and
> conditions with a reckless disregard and failure to prescribe a
> medical diet for Plaintiff's medical conditions, failed to treat
> Plaintiff's skin rash and defective submandibular gland and
> failed to regularly monitor Plaintiff's hypertension and diabetes.
> Reference is Grievance No. 50246  for which this cruel
> and unusual punishment has occurred after completion of
> Plaintiff's judicially imposed sentencing on/or about May 22, 2002.

(Doc. 18, p. 9, ¶ PP.).

Plaintiff alleges as follows, in his Amended Complaint, with respect to Defendant Dr. Stanish:

> QQ.   Stan Stanish, PA D.O.C. Supervisory Physician for SCI Facilities
> Eastern Area including SCI Dallas, same address as III.A., who was advised
> by Plaintiff during December, 2002 medical check-up that Plaintiff's
> judicially imposed sentencing was completed on/or about May 22, 2002
> but Plaintiff serious medical conditions are not monitored for which
> Plaintiff avers decrease of life expectancy, that Plaintiff (sic) defective
> submandibular gland and skin rash were not treated by acting with
> deliberate indifference in a reckless disregard to Plaintiff's life
> threatening serious medical indications; which is a conspiracy to
> murder Plaintiff and, Defendant also fails to provide medical diet.

(Doc. 18, p. 10, ¶ QQ.).   *See* Doc. 192, Ex. A.

We find no further mention of Defendants Dr. Bohinski and Dr. Stanish in Plaintiff's amended pleading.  In particular, Plaintiff does not specifically include Dr. Bohinski and Dr. Stanish in his main claim that he was "illegally incarcerated beyond completion of judicially imposed

sentencing by illegal additional sentence for same conviction." (*Id*., p. 15, ¶ 1.).  Plaintiff merely states that at his December 2002 medical check-up, he advised Dr. Stanish that his "judicially imposed sentencing was completed on/or about May 22, 2002," but he does not allege any personal involvement by Dr. Stanish with his illegal excessive confinement claim.  (*Id*., p. 10, ¶ QQ.).  Nor does it follow that, based on Plaintiff's averment as to Dr. Stanish's title, Supervisory Physician for Pennsylvania State prisons in the eastern area, this Defendant would have any involvement with calculating the prison time Plaintiff was required to serve under his CCP sentences.  Plaintiff essentially alleges that Dr. Stanish failed to monitor his serious medical conditions, which he claims led to a "decrease of [his] life expectancy." (*Id*.).  Plaintiff does not allege any personal involvement at all by Dr. Bohinski with respect to his illegal excessive confinement claim. (*Id*., p. 9, ¶ PP.).  Plaintiff only states that the alleged failures of Dr. Bohinski to properly  treat him occurred after he completed his judicially imposed sentences on about May 22, 2002. (*Id*.).

Thus, we do not find that Plaintiff states that Dr. Bohinski and Dr. Stanish had anything to do with his Eighth Amendment excessive confinement claim.  Nor do we find that either of the Medical Defendants had any personal involvement with Plaintiff's First Amendment denial of access to courts claim.  We do not find any evidence that the Medical Defendants were involved with Plaintiff's Eighth Amendment excessive confinement claim and First Amendment denial of access to courts claim.  Also, as stated above, Plaintiff's vague conspiracy to murder claim as against Dr. Stanish was previously dismissed by the District Court.  (Doc. 171).  Therefore, as we found in our December 21, 2007 Report and Recommendation (Doc. 238), Plaintiff is proceeding only on his

Eighth Amendment denial of proper medical care claims as against the Medical Defendants.

Plaintiff seeks compensatory and punitive damages from all Defendants as well as injunctive relief. (*Id.*, p. 15).

Plaintiff avers that Dr. Bohinski failed to properly treat him for his medical needs and conditions. Specifically, Plaintiff alleges that Dr. Bohinski failed to prescribe a medical diet for Plaintiff, failed to treat Plaintiff's skin rash and defective submandibular gland, and that he failed to regularly monitor Plaintiff's hypertension and diabetes. (Doc. 18, p. 9, ¶ PP.). Plaintiff references his Grievance No. 50246. (*Id.*).[15]

As we have found in our December 21, 2007 Report and Recommendation (Doc. 238, pp. 28), the evidence shows that Plaintiff did receive a medical (diabetic) diet and that Plaintiff's alleged Eighth Amendment claim as to his submandibular gland condition amounted to a mere dispute between Plaintiff and the prison medical staff, in that Plaintiff felt his gland should be removed and the doctors did not agree.

Plaintiff states that Defendant Stanish was deliberately indifferent to his serious medical conditions, since these conditions were not monitored, causing Plaintiff a "decrease of life expectancy," and that Dr. Stanish did not treat his "defective submandibular gland and skin rash" and that the doctor was "acting with deliberate indifference in a reckless disregard to Plaintiff's life threatening serious medical indications." Plaintiff also alleges that Defendant Stanish failed to provide him with his medical diet. Plaintiff states that by not treating his serious medical conditions, specified above, and by acting with deliberate indifference to them, this constituted a "conspiracy

---

[15]We do not find a copy of Plaintiff's Grievance No. 50246 in the record.

to murder Plaintiff" by Dr. Stanish.  Thus, Plaintiff states what his serious medical conditions were, i.e., "defective submandibular gland and skin rash," and he also states that Defendant Stanish violated his Eighth Amendment rights by not providing him with an unspecified medical diet.  (*Id*. p. 10, ¶ QQ.).  Plaintiff again references his Grievance No. 50246.  (*Id*.).

In our December 21, 2007 Report and Recommendation (Doc. 238, pp. 20-21), we indicated what Plaintiff's medical conditions were according to the record.  We stated that his conditions were:

> On August 2, 2000, Mr. Atwell received an exam and a medical review, which noted that he had been diagnosed with several chronic conditions, including hypertension, gout, type 2 diabetes (non-insulin dependent), sialoadenitis of the left submandibular gland and a history of renal artery stenosis following a 1997 bilateral renal angioplasty.

(Doc. 184, Ex. C, ¶6.).

## V.  Discussion.

Defendants Bohinski and Stanish are not mentioned anywhere in Plaintiff's Amended Complaint, other than the stated paragraphs PP. and QQ. contained in Section III, "Defendants," of his amended pleading, Doc. 18, pp. 9-10.  With respect to Dr. Bohinski, Plaintiff generally avers that this Defendant failed to properly treat him after he completed his sentence in May 2002.  (*Id*., p. 9, ¶ PP.).[16]  Plaintiff remained confined at SCI-Dallas until May 2004.  As noted, other than the December 2002 medical check-up, no other date is specified as to when Dr. Stanish allegedly failed

---

[16]Plaintiff has changed the date as to when he claims his sentences expired to October 19, 2002. (Doc. 201, p. 3).

to treat Plaintiff for his serous medical conditions by acting with deliberate indifference to them.[17] Plaintiff mentions what his serious medical conditions were, *i.e.* "defective submandibular gland and skin rash," and he also states that Defendant Stanish violated his Eighth Amendment rights by not providing him with an unspecified medical diet.  (*Id*. p. 10, ¶ QQ.).[18]

Plaintiff avers that Dr. Bohinski failed to treat him properly commencing May 2002, by failing to prescribe a medical diet, failing to treat his skin rash and defective submandibular gland, and by failing to regularly monitor his hypertension and diabetes. (*Id*., p. 9, ¶ PP.).  Plaintiff did not specifically aver how and when Defendant Stanish refused to treat him, but he stated that this doctor did not monitor his serious medical conditions, which caused a decrease of his life expectancy.  Plaintiff also averred that Dr. Stanish failed to provide him with a medical diet.  (*Id*. p. 10, ¶ QQ.).  As discussed above, and in our December 21, 2007 Report and Recommendation, we did not find Plaintiff's averment that during a December 2002 medical check-up, he advised Dr. Stanish that his judicially imposed sentence was completed in May 2002, sufficiently states that Dr. Stanish was personally involved with Plaintiff's Eighth Amendment excessive confinement claim. There is no evidence that Dr. Stanish had anything to do with the calculation of Plaintiff's CCP sentences.  (*See* Doc. 191, Exs. 24-A to 24-J and Exs. 25-A to 25-J, Plaintiff's evidence regarding his

---

[17]We note that Plaintiff's prison medical record exhibits attached to a prior Brief (Doc. 159) contained the dates Dr. Stanish treated him.  These records also indicated that Plaintiff had diabetes. (*Id*., Ex. 9).  Medical Defendants' Exhibits also contain Plaintiff's medical records. (Doc. 192, Ex. C).

[18]Plaintiff's prior medical records also indicate that he requested a proper medical diet for his conditions of gout, diabetes and hypertension, and that he filed Inmate Requests to Staff and grievances complaining that he was not provided with said diet. (Doc. 159, Exs. 16-31).

requests and grievances complaining about the DOC's computation of his sentences.).

### 1.  Failure to Exhaust Administrative Remedies

As their last argument in their Summary Judgment Brief, Medical Defendants contend that Plaintiff failed to exhaust his available Administrative remedies with the DOC with respect to his Eighth Amendment denial of medical care claims against them.  (Doc. 192, pp. 14-15).  Since failure to exhaust by Plaintiff regarding his Eighth Amendment claims against Medical Defendants is a threshold issue and would be fatal to his claims, we are compelled to discuss this argument first. See Banks v. Roberts, 2007 WL 3096585, * 1 (3d Cir. 2007)(Non-Precedential).

As stated, with respect to his Eighth Amendment denial of medical care claims against Medical Defendants (Doc. 18, pp. 9-10, ¶'s PP. and QQ.), Plaintiff references his Grievance No. 50246.[19]  As mentioned, Defendants lastly argue that the Plaintiff failed to exhaust his available

---

[19]Plaintiff's Grievance No. 40189 concerned his Eighth Amendment claim that Commonwealth Defendants had incorrectly computed his state court sentences and were illegally incarcerating him beyond his maximum sentences.  (Doc. 191, Exs. 24-A to 24-H). Plaintiff's Exs. 25-A to 25-J, relate to Plaintiff's pursuit of his Eighth Amendment excessive confinement claim with the PA Board Defendants.  While Plaintiff's evidence shows that he exhausted this Eighth Amendment claim against Commonwealth Defendants, it also shows that Medical Defendants were not alleged to have been involved with this Eighth Amendment excessive confinement claim, and that there was no exhaustion of this Eighth Amendment claim as against Medical Defendants.  Thus, we find that Plaintiff has only asserted Eighth Amendment denial of proper medical care claims as against Medical Defendants, and that these Defendants are only alleged to have been personally involved with this claim.  In fact, as Medical Defendants state in their SMF (Doc. 193, p. 3, ¶ 15), Plaintiff testified at his deposition that he does not know of any legal authority which would have required either Medical Defendant to have acted with respect to his excessive confinement claim.  (Doc. 192, Ex. B, NT 55-56). Rather, Plaintiff simply testified that Medical Defendants were "an accomplice liability to illegal incarceration.  They could have informed records management, this man says he's being illegally incarcerated."  (Id. and Doc. 201, p. 5, ¶ I.).  Plaintiff could not cite to any authority that a physician had a duty to act with respect  to the length of an inmate's sentence.  (Doc. 192, Ex. B, NT 57).

administrative remedies. (Doc. 192, p. 14).   However, since exhaustion is a threshold issue, we shall consider this argument first.  Medical Defendants have properly raised the Plaintiff's failure to exhaust by the filing of their present Motion.  Medical Defendants must plead and prove the exhaustion issue as an affirmative defense in accordance with *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002).  Here, the Defendants have raised this defense as to Plaintiff's Eighth Amendment claim and have provided evidence to show that Plaintiff did not exhaust his Administrative remedies with the prison with respect to his Eighth Amendment denial of proper medical care claims against them before he filed this action.  (Doc. 192, Ex. J).  As the *Ray* Court noted, 285 F. 3d at 295, n. 8, failure to exhaust may be raised as the basis for a motion to dismiss or for summary judgment, and we find that this defense is properly asserted in the Defendants' present Summary Judgment Motion.

Medical Defendants have properly filed their Statement of Material Facts ("SMF") in support of their Summary Judgment Motion as required by Local Rule 56.1 M.D. Pa.  (Doc. 193).  Plaintiff has responded to Defendants' SMF. (Doc. 201, p. 3-13).  Defendants have referenced to evidence to support their SMF's as required.  With respect to Defendants' exhaustion argument, Defendants' SMF's ¶'s 82.-89., Doc. 193, pertain to this argument.  Defendants' ¶ 83. of their SMF, Doc. 193, states:

---

As indicated above, it is well-settled that *respondeat superior* is not a basis to hold a Defendant liable in a § 1983 action.  Moreover, Plaintiff had already informed the prison staff about his contention that his sentence was to have expired in October 2002 *via* his grievances. Doc. 191, Exs. 24-A to 24-H and Exs. 25-A to 25-J.  Doc. 192, Ex. J.

We note that Plaintiff originally claimed that his maximum sentences expired on May 22, 2002, but after he received responses from Defendants during discovery, he changed his claim that he was illegally incarcerated commencing May 22,  2002 to commencing October 19, 2002.  (Doc. 201, p. 3).

83.   None of the grievances filed by Atwell address either moving defendant Dr. Bohinski or Dr. Stanish.  Their names appear in none of Atwell's grievances.  None of Atwell's grievances refer, relate or pertain to the medical treatment at issue in this matter.  Only one grievance is arguably related to any claim against moving defendants in this matter -- the allegation that Atwell remained incarcerated beyond his maximum date, and as discussed herein, no such claim can be maintained against either moving defendant.  Further, even in the case of this one grievance, no mention of the alleged actions or inactions of moving defendants is made.  (See Ex. "J", throughout).

Plaintiff responded to ¶ 83. of Defendants' SMF as follows:

P.   Regarding No. 83, Defendants do not reference any specific grievance and the fact that Plaintiff completed the grievance process for claim of illegal incarceration, reference Plaintiff's March 30, 2007 served motion for summary judgment appendices 24. and 24. A. - H.  Defendants denied Plaintiff's medical liberty interest.

(Doc. 201, p. 13, ¶ P.).

We agree with Defendants and find that the evidence shows that Plaintiff did not exhaust his Administrative remedies with the prison with respect to his Eighth Amendment denial of proper medical care claim against them before he filed this action.  We disagree with Plaintiff that simply because he exhausted his Eighth Amendment claim that he was being illegally incarcerated, and because his evidence shows that he did (Doc. 191, Exs. 24-A to 24-H), this does not mean that he also exhausted his Administrative remedies against Medical Defendants regarding his Eighth Amendment denial of proper medical care claims against them.  As noted, Plaintiff's evidence (Doc. 191, Exs. 24-A to 24-H and Exs. 25-A to 25-J) shows that he raised his claim that prison staff and PA Board members were illegally increasing the length of his sentences, but it does not show that he exhausted his Administrative remedies against Medical Defendants regarding his Eighth

Amendment denial of proper medical care claim against them.[20]

---

[20]We recognize that in *Jones v. Bock*, 127 S.Ct. 910 (2007), the Supreme Court held that the failure to name defendants under the Michigan State grievance procedure (MDOC) did not amount to a failure to exhaust.  However, the Michigan State grievance procedure did not require that the inmate had to name the specific prison staff in his grievance.  *See Buehl v. Beard*, 2007 WL 1830616, * 7, n. 8 (W.D. Pa.)  The Court in *Buehl* stated that, while the MDOC policy did not require an inmate to identify specific prison staff involved with his grievance, the Pennsylvania DOC grievance policy does have such a requirement.  As the *Buehl* Court stated:

> the Court in *Spruill* has already held that the Pennsylvania DOC's grievance policy does contain such a requirement to name responsible individuals and that "[t]he purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing."  *Spruill,* 372 F.3d at 234.

*Id*.

The *Buehl* Court further stated:

> This court understands *Bock* to state that whereas Congress' intent in the PLRA's statutory exhaustion requirement was not thought to have as one of its leading purposes early notice, such a purpose may have been a subordinate purpose.  Even if not a subordinate purpose of the Congress, early notice can be a purpose of the state policy (which provides the yardstick by which to measure exhaustion) and as *Spruill* seemed to at least imply, was such a purpose of the DOC policy.  Even if not a purpose of the DOC policy, it is clear, regardless of the purpose of the requirement, that *Spruill* requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default.  *See, e.g., Williams v. Pennsylvania, Dep't of Corrections*, 146 Fed.Appx. 554, 557 (3d Cir. 2005) ("his failure to identify defendants Herbert, Street, or Smith in either of his two grievances, means that he failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA.").

*Id*.

Further, since Medical Defendants have supported their SMF's ¶'s 82. - 89. by citation to the evidence (Doc. 192, Ex. J), and since Plaintiff has not properly disputed these ¶'s (Doc. 201, pp. 12-13) by pointing to evidence which controverts the stated ¶'s of Defendants' SMF, we shall adopt Defendants' ¶'s 82. - 89. of their SMF. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (Under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[21]

Medical Defendants argue, and the undisputed evidence shows, that at the time this case was instituted, Plaintiff did not exhaust his administrative remedies as to his Eighth Amendment denial of proper medical care claims against Medical Defendants.  As we previously noted, in his Amended Complaint, Plaintiff referenced his Grievance No. 50246.  We have not found a copy of Grievance No. 50246 in the record.  However, we do take judicial notice that since Plaintiff's last grievance in the record was dated January 2, 2003, namely Grievance No. 40189, and that this number precedes number 50246 by more than 10,000 numbers, Plaintiff's alleged Grievance No. 50246 had to be filed sometime well after January 2, 2003, and possibly after he commenced this action on September 30, 2003.  (Doc. 1).  In any event, as discussed, we do not find any evidence that Plaintiff exhausted his Eighth Amendment denial of proper medical are claims as against Medical Defendants before he filed this action.

We find that the evidence shows that Plaintiff did not exhaust his Administrative remedies as to his Eighth Amendment denial of proper medical care claims against Medical Defendants.

---

[21]*See also Paranich* District Court case at 286 F. Supp. 2d at 447, n. 3.

(Doc. 192, Ex. J).  In prior exhibits submitted by Plaintiff in this case, namely Doc. 160-2, Ex. 11, 8-15-06, Plaintiff provided a copy of an Inmate Request to Staff Member, directed to Defendant Dr. Bohinski.   This Request dated January 8, 2002, requested the surgical removal of his submandibular gland.  Plaintiff stated that Dr. Stec, an ENT specialist, had recommended in January 2002 that Plaintiff be given the option of the  surgical removal of his left submandibular gland for his chronic condition.  Plaintiff previously submitted a copy of Dr. Stec's January 12, 2002 letter to Dr. Bohinski.  (Doc. 160-2, Ex. 12).  Plaintiff's evidence also indicates that on May 24, 2007, three years after his release from prison, he had surgery for the removal of his left submandibular gland. (Doc. 201, Ex. 3).   Plaintiff also testified about Dr. Stec's recommendation that he be given the option for the surgical removal of his gland.  (Doc. 192, Ex. B, NT 64-66).  We do not, however, find any evidence that Plaintiff filed a grievance after his January 8, 2002 Request to Dr. Bohinski or that he even filed a Request concerning his other Eighth Amendment medical care claims against Medical Defendants, such as failure to prescribe medical diet, failure to treat his diabetes, failure to treat his hypertension and gout, and  failure to monitor his medical conditions.  (Doc. 192, Ex. B, NT 59-61).  Nor do we find any evidence that Plaintiff exhausted all of his DOC available Administrative  remedies with respect to his Request that he be given surgery for the removal of his left submandibualr gland.[22]

---

[22]Defendants' evidence includes the DOC Administrative remedies policy DC-ADM 804, Doc. 192, Ex. K.  We are cognizant that this Court has frequently stated the requirements of this policy.  *See Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.).

Moreover, even if Plaintiff did exhaust his Request regarding the surgery for the removal of his left submandibular gland, and we do not find that he has, the evidence shows that the treatment option for surgery as opposed to medication amounted to a differing opinion of Plaintiff's doctors. Indeed, the medical records show, and Plaintiff admitted, that he was placed on medications for his gland problem.  (Doc. 192, Exs. C and Ex. B, NT 62-65).  Plaintiff testified that he only had two flare-ups and swelling of his gland while in prison, and that he was provided with medications for them.  (*Id.*, NT 63).

In the recent case of *James v. PA DOC,* 230 Fed. Appx. 195, 197-198 (3d Cir. 2007), the Third Circuit stated:

> Although James may have preferred a different course of treatment, his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts. *See Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979)("[c]ourts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment.' "); *see also White v. Napoleon,* 897 F.2d 103, 110 (3d Cir.1990)(doctor's choice of one drug over another is not actionable). Further there is no indication that Dr. Barnes' decision was based on an ulterior motive beyond routine patient care within the confines of the Department's policies. *See Spruill v. Gillis,* 372 F.3d 218, 237 (3d Cir.2004)(noting that in order to state a deliberate indifference claim, a plaintiff should in some way "connect[ ] his factual allegations to the alleged mental states" of the defendants); *see also Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993)(allegations of a deliberate denial of treatment "motivated by non-medical factors" are sufficient to state an Eighth Amendment claim). Thus, the district court correctly held that James' allegations could not constitute deliberate indifference.[23]

---

[23]As indicated in our previous Report and Recommendation (Doc. **Mary), Commonwealth Defendants have submitted a copy of the *James* case, Doc. 204.

The Court in *James, supra*, 230 Fed. Appx. at 197, also stated:

> The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in *Estelle v. Gamble,* 429 U.S. 97, 104, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. *See Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987); *see also Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999). "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " *Rouse,* 182 F.3d at 197. "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." *Lanzaro,* 834 F.2d at 346. Grossly negligent behavior, however, can constitute deliberate indifference as can a doctor's choice to take an "easier and less efficacious course of treatment" in response to a serious medical need. *Id.* at 347.

Plaintiff's mere disagreement with the necessity for the surgery as to his gland flare-ups on two occasions as opposed to the decision of Medical Defendants to treat them with medications does not amount to an Eighth Amendment violation.  *See James, supra.*

The exhaustion requirement is a mandatory prerequisite to filing suit and must be sufficiently alleged.  *See Booth v. Churner*, 206 F. 3d 289 (3d Cir. 2000) *aff'd* 532 U.S. 731, 121 S. Ct. 1819 (2001); *Nyhuis v. Reno*, 204 F. 3d 65 ( 3d Cir. 2000).  Even if a Plaintiff is seeking both injunctive and monetary relief, as in this case (Doc. 18, p. 15), he still must exhaust his administrative remedies, as the PLRA makes no distinction between claims for damages, injunctive relief, or both. *Id.*  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

wrong." *Id.*

The Third Circuit Court of Appeals, as stated above, has held in the case of *Ray*, 285 F.3d at 295-296, that the defendant has the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action. Medical Defendants, as discussed, have properly asserted this defense in the present case.

Recently, the Supreme Court reiterated that exhaustion was required in § 1983 cases. In *Woodford v. Ngo*, _ U.S._, 126 S. Ct. 2378, 2382-2383 (2006), the Court stated,

> The PLRA strengthened the exhaustion provision in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. *See Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Prisoners must now exhaust all "available" remedies, not just those that meet federal standards. Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought - - monetary damages - - cannot be granted by the administrative process. *Id.* at 734, 121 S.Ct. 1819. Finally, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983. *Nussle, supra*, at 524, 122 S.Ct. 983.

The Third Circuit has also very recently re-stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to fling suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted). The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Id.*

As Medical Defendants argue in their Brief, Plaintiff's action is certainly challenging prison conditions and thus, exhaustion is required in his case. It is undisputed that the PA DOC has a grievance system available to inmates to complain about prison conditions. (Doc. 192, Ex. K). *See*

*Fortune, supra.*  It is undisputed that before filing the instant action, Plaintiff did not exhaust his

available Administrative remedies at SCI-Dallas concerning his Eighth Amendment denial of proper

medical care claims against Medical Defendants.  (Doc. 192, Ex. J).  Plaintiff testified as follows

regarding whether he exhausted his Administrative remedies with respect to his Eighth Amendment

claims against Medical Defendants:

> Q.      Did you file  - - during your time at SCI Dallas and with regard to either Dr. Bohinski or Dr. Stanish, did you file any medical-related grievances?
>
> A.      I don't recall.  You'll have to check the records.
>
> Q.      Do you have in our possession, to your knowledge, and I don't mean sitting right here, I mean within your control and custody anywhere, grievances which you believe are medical grievances directed to either Dr. Stanish or Dr. Bohinski?
>
> A.      I believe the diet factor was one, yes.[24]
>
> Q.      And were these grievances that specifically complained by name about either Dr. Stanish or Dr. Bohinski or just about the diet problem in general?
>
> A.      Without looking at the paperwork, I can't tell you exactly.
>
> Q.      Did you  - - ?
>
> A.      You probably have a copy of that stuff yourself.
>
> Q.      Did you grieve throughout the three-step process  - -
>
> A.      Yes.
>
> Q.      - - - any medical complaints about either Dr. Bohinski

---

[24]As discussed above, the record shows that Plaintiff was prescribed a therapeutic diet on different occasions while in prison. (Doc. 192, Ex. C).

or Dr. Stanish?

A.      The medical diet.

Q.      Did you ever grieve regarding Dr. Stanish or Bohinski concerning your treatment for blood pressure?

A.      I can't recall.

Q.      Your treatment for diabetes?

A.      I can't recall.

Q.      Your treatment for gout?

A.      No on that.

Q.      Your treatment for  - - - ?

A.      Except for medical diet on all of them.

Q.      Your treatment for your submandibular gland problem?

A.      I can't recall.  My medical diet affected all my gout, diabetes, hypertension problems.

Q.      In the grievance that you're referring to, grievance or grievances regarding your medical diet, did those grievances discuss diabetes, blood pressure, gout or submandibular joint  - - excuse me, submandibular gland?

A.      I can't recall that grievance. You got the number that says.

Q.      Is that the only grievance that might have specifically discussed Dr. Stanish or Dr. Bohinski?

A.      Without going to my records, I can't state one way or the other.

Q.      Okay.  Well, I'm going to make a request on the record here today for you to copy and produce to me all copies of all grievances which you directed toward either Dr. Stanish or

28

Dr. Bohinski concerning your medical care and treatment at Dallas.

A.     Why is that something I have to comply with?  Isn't a Court Order required?

Q.     In discovery, no.

A.     On discovery, no?

Q.     No.

A.     Put that in writing because I can't remember.

Q.     Care of 335 East Lancaster Avenue - - -?

A.     That's my mailing address and it's going to take me a while to do it, too.

Q.     Well, pursuant to federal civil procedure, you'll have 30 days to respond.

(Doc. 192, Ex. B, NT 108-110).

As stated, Plaintiff has not produced any evidence that he exhausted his Eighth Amendment denial of proper medical care claims against Medical Defendants.  Medical Defendants have provided evidence that he did not exhaust the stated claims.  (Doc. 192, Ex. J).

We have discussed why Plaintiff's assertion that he exhausted his Administrative remedies regarding his 2007 WL 3096585, * 1, in which the record showed that the inmate filed many requests and grievances on various topics, but that the inmate did not exhaust his available Administrative remedies, the record in our case also shows that Plaintiff Atwell filed several grievances during the relevant time of May 2002 through May 2004, and that he did not exhaust his Administrative remedies with respect to his Eighth Amendment denial of proper medical care

claims against Medical Defendants.  (Doc. 192, Ex. J).  Also, as stated, we do not find a copy of Plaintiff's Grievance No. 50246 which he references in his Amended Complaint in his claims against Medical Defendants, Doc. 18, ¶'s PP. and QQ., and this Grievance No. preceded Plaintiff's last grievance in the record, Grievance No.  40189, which was filed January 2, 2003. (Doc. 191, Ex. 24-A).  Since Plaintiff's Grievance No.  40189 was filed on January 2, 2003, his alleged Grievance No. 50246 had to be filed sometime thereafter.  It is not clear if Plaintiff filed Grievance No. 50246 before or after he filed the present action, but it is clear from the record that Plaintiff did not exhaust his available Administrative remedies with the DOC with respect to Eighth Amendment denial of proper medical care claims against Medical Defendants.  The PLRA clearly provides that a § 1983 action with respect to prison conditions cannot be brought until the available Administrative remedies at the prison are exhausted.  *See Ngo*, 126 S. Ct. at 2384; *Banks, supra*. Plaintiff essentially thwarted the purpose of the exhaustion requirement by not allowing the prison to have a fair and full opportunity to address his present Eighth Amendment denial of medical care claims against Medical Defendants before he filed this action. *Id*. at 2385.

The Court in *Ngo* concluded that "the PLRA exhaustion requirement requires proper exhaustion."  *Id*. at 2387.   The manner in which Plaintiff attempted to exhaust his Eighth Amendment claim in this case, *i.e.* at best by filing grievances but not fully exhausting all of his Administrative remedies, renders the prison's grievance system as meaningless, since a prison's grievance process should provide "prisons with a fair opportunity to correct their own errors."  *Id*. at 2387-2388.  Thus, we find under *Ngo*, Plaintiff did not properly exhaust his administrative remedies with the DOC since he did not not fully exhaust all of his Administrative remedies

regarding his alleged improper medical care claims before he filed his § 1983 action with this Court.

Plaintiff's improper exhaustion in this case renders the PLRA exhaustion requirement as completely ineffective. As the *Ngo* Court stated, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id*. at 2388. The *Ngo* Court indicated that if an inmate files a late grievance for no reason, the inmate may be avoiding compliance with the Administrative process, and if the prison rejects the grievance as untimely, then the inmate could file a suit directly in federal court. *Id*. In the present case, the record shows that Plaintiff Atwell did not not fully exhaust all of his Administrative remedies with the DOC before he filed his action with this Court. (Doc. 192, Ex. J). Further, Plaintiff's exhibits regarding his grievances indicate that he exhausted his Eighth Amendment excessive confinement claim, but not his Eighth Amendment denial of medical care claims against Medical Defendants.

The utilization of the prison grievance system by Plaintiff in this case certainly did not afford the prison with a full and fair opportunity to consider his Eighth Amendment claims against Medical Defendants before this case was commenced. As in *Ngo*, we find that Plaintiff's use of the DOC's grievance system rendered the PLRA's exhaustion as "a toothless scheme." *Id.*

As the Court stated in *Ullrich v. Idaho*, 2006 WL 288384 , * 2 (D. Idaho), "[a] prisoner is required to exhaust all of his Administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions fo his confinement." "Exhaustion must occur prior to filing suit, and a prisoner may not attempt exhaustion of his Administrative remedies during the course of a civil rights action." (Citation omitted).

The Court in *Parker v. Perry*, 2006 WL 2635097,  * 1 (E.D. Tex.), stated as follows:

> In 1996, Congress enacted the Prison Litigation Reform Act (hereinafter "P.L.R.A."), which made several changes to 42 U.S.C. § 1997e. Congress tightened up the exhaustion requirements.  Without exception, inmates are now required to exhaust all administrative remedies available in the prison system prior to filing a lawsuit.  The Supreme Court examined the new rules and unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court.  *Booth v. Churner*, 532 U.S. 731 (2001).  *See also Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001).  The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Most recently, the Supreme Court reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies.  *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  It is noted that the grievance procedures take approximately ninety days to complete.  *See Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998).  It is further noted that the Court has the option to dismiss civil rights lawsuits with prejudice where an inmate filed a lawsuit before exhausting his administrative remedies.  *See Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998).

*See also Tron v. U.S.*, 2006 WL 2599348 (D. Or.).   Exhaustion is a pre-condition to a § 1983 civil rights action and is mandatory.  *See Ngo*, 126 S. Ct. at 2382; *Banks, supra*.

Further, as this Court recently stated in *Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.), "[t]he PLRA mandates that inmates 'properly' exhaust Administrative remedies before filing suit in federal court." (Citing *Ngo* at 2387).  This Court also stated that the PLRA exhaustion requirement was designed, in part, to "afford corrections officials an opportunity to address complaints internally before allowing the initiation of a federal suit."  *Id.*, *9.  As in the *Fortune* case, it is clear that Plaintiff Atwell did not fully exhaust all of his Administrative remedies as to his Eighth Amendment claims against Medical Defendants.  Plaintiff's grievances regarding his excessive confinement claim were  not sufficient to put the DOC officials on notice and to give them an opportunity to address

Plaintiff's claims that Medical Defendants  failed to properly treat his conditions.[25]

We find that Medical Defendants' Summary Judgment Motion (Doc. 187) should be granted for failure of Plaintiff to exhaust his Administrative remedies against them before he filed this action based on *Ngo* and *Fortune*.  *See also Farrell v. Beard*, 2006 WL 2828862 (M. D. Pa.); *Lasko v. Hendershot*, 2006 WL 2828787 (M.D. Pa.).[26]

**VI.  Recommendation.**

Based on the above, it is respectfully recommended that Medical Defendants' Motion for Summary Judgment **(Doc. 187)** be granted for failure of Plaintiff to exhaust his Administrative remedies against them with respect to his Eighth Amendment denial of proper medical care claims. It is further recommended that Plaintiff's cross-Summary Judgment Motion as against Medical

---

[25] As we previously stated, Plaintiff's Eighth Amendment excessive confinement claim did not implicate the personal involvement of the Medical Defendants.

[26] As this Court in *Lasko* noted, since the exhaustion issue is a threshold issue, there is no need to consider the alternative arguments in Medical Defendants' Brief in support of their Motion for Summary Judgment, *i.e.*, the evidence shows that they were not deliberately indifferent to any of Plaintiff's serious medical conditions.  Nor do we need to consider Plaintiff's cross-Summary Judgment Motion against Medical Defendants.  *See Lasko v. Hendershot*, 2006 WL 2828787 at * 5, n. 3.

Defendants **(Doc. 188)** be denied.[27]  Finally, it is recommend that Judgment be entered in this case in favor of Medical Defendants and against Plaintiff with respect to Plaintiff's Eighth Amendment claims against them.[28]

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: January 2, 2008**

---

[27]In our December 21, 2007 Report and Recommendation (Doc. 238, p. 51), we recommended that Plaintiff's cross-Summary Judgment Motion (Doc. 188) as against Commonwealth Defendants be denied.

[28]As noted above, we also recommend that Dr. Bohinski's Supplemental Memorandum for Summary Judgment **(Doc. 195)** be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GEOFFREY W. ATWELL,                  :          CIVIL ACTION NO. **1:CV-03-1728**
                                     :
                  Plaintiff          :          (Judge Rambo)
                                     :
            v.                       :          (Magistrate Judge Blewitt)
                                     :
SUPERINTENDENT T. LEVAN, et al.,     :
                                     :
                  Defendants         :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated January 2, 2008.

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


                              **s/ Thomas M. Blewitt**
     _____
                              **THOMAS M. BLEWITT**
                              **United States Magistrate Judge**


**Dated: January 2, 2008**